IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| HARK'N TECHNOLOGIES, INC., a Utah corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>ORANGE WHIP FITNESS X, LLC et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [30] MOTION TO DISMISS<br><br><br>Case No. 1:21-cv-00054-CMR<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the undersigned on the consent of all parties pursuant to 28 U.S.C. § 636(c) (ECF 25). Before the court is Defendant Orange Whip Fitness X, LLC (Orange Whip), Jimmy Hack Golf, LLC (Jimmy Hack), Douglas J. Wald (Wald), Brian J. Newman (Newman), and (collectively, Defendants) Motion to Dismiss (Motion) (ECF 30).[1] On March 28, 2022, the court entered an order dismissing Golf Fitness X and Hackenberg without prejudice (ECF 51) and ordered supplemental briefing regarding the remaining parties and claims (ECF 51, 54).

The court has considered the Motion (ECF 30), the response (ECF 35), the reply (ECF 41), the arguments presented at the April 14, 2022 hearing (ECF 54), Plaintiff's supplemental brief (ECF 56), the joint supplemental brief (ECF 57), and Defendants' supplemental brief (ECF 62).[2] Having carefully considered all filings, the court finds no additional oral argument is necessary. *See* DUCivR 7-1(g). The court GRANTS the Motion in part and DENIES the Motion in part.

---

[1] The Motion is also captioned in the alternative for summary judgment. The court previously terminated the alternative motion for summary judgment as moot and dismissed two Defendants by stipulation of the parties (James A. Hackenberg and Golf Fitness X) (ECF 51).

[2] Defendant's supplemental brief was untimely filed after seeking leave of the court (ECF 58, 59, 61).

# I.     BACKGROUND

Plaintiff specializes in designing and manufacturing custom exercise equipment. According to the Complaint in this matter, one of its flagship products are orange and black sleeved resistance bands called "Slastix" which are combined with, or attached to, other of Plaintiff's products (ECF 2 at ¶ 2). The Slastix products have a trademark called STROOPS that appear on the products (ECF 2 at ¶ 152). In 2019, Defendants approached Plaintiff about designing and manufacturing custom elastic bands for Defendants' golf products (ECF 2 at ¶ 3). Further negotiations followed (ECF 2 at ¶¶ 39–71). According to Plaintiff, the parties entered a contract to design, manufacture and sell such products. Plaintiff alleges that after the 106 prototypes were delivered, Defendants refused to honor that contract, took the prototypes to a different manufacturer, and then began marketing and selling their own sleeved resistance bands and related attachments called "Power Strap Products" (ECF 2 at ¶¶ 4–6). Plaintiff also alleges Defendants used images of Plaintiff's Slastix products for Defendants' marketing materials, advertising, and exercise training videos (ECF 2 at ¶¶ 72–94).

Plaintiff brought this action asserting fraud, breach of contract, trade dress infringement, false designation of origin, trademark infringement, Utah statutory and common law unfair competition, misappropriation of trade secrets under Federal and Utah state law, and unjust enrichment (ECF 2). In its response brief (ECF 35), Plaintiff conceded that all claims against Golf Fitness X and Hackenberg should be dismissed without prejudice (ECF 35 at 30). The court therefore dismissed those parties (ECF 51).

 Plaintiff alleges jurisdiction based on both federal question under 15 U.S.C. § 105, § 1121(a), § 1338 and § 1338(b) and diversity under 28 U.S.C. § 1332 "because the parties are citizens of different states and the amount in controversy exceeds $75,000" (ECF 2, Complaint

¶¶ 14-17).  In the pending Motion, Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and under 12(b)(6) for failure to state a claim (ECF 30).

With respect to dismissal under Rule 12(b)(2) for lack of personal jurisdiction, Defendants assert Plaintiff's Complaint fails to establish personal jurisdiction as to all claims against Defendant Jimmy Hack. Defendants Orange Whip, Wald, and Newman assert a lack of minimum contacts for the claims of trade dress infringement, trademark infringement, false designation of origin, and unfair competition against Defendants Orange Whip, Wald, and Newman.

Defendants also move to dismiss for failure to state a claim under Rule 12(b)(6) (ECF 30). Defendants assert Plaintiff has failed to state a claim against all Defendants for trade dress infringement, trademark infringement, false designation of origin, unfair competition, and trade secrets. Defendants assert Plaintiff has failed to state a claim against Orange Whip for breach of contract. Defendants assert that Plaintiff has failed to plead a claim against Jimmy Hack for fraud. Defendants also claim the unjust enrichment must be dismissed as to all Defendants.

The court addresses the issues of personal jurisdictional first.

## II. PERSONAL JURISIDCTION

### A.  Framework of Analysis for Federal Question Jurisdiction in this Case

"[T]he threshold question in every federal case," is whether the court has the power to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiff has the burden to establish personal jurisdiction on each claim asserted. *Chen v. U.S. Bank Nat'l Ass'n*, No. 2:15-cv-850 TS, 2016 WL 3747584, at *1 (D. Utah July 11, 2016). The plaintiff's burden to show personal jurisdiction exists is light, and the plaintiff need only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514

F.3d 1054, 1056–57 (10th Cir. 2008). Plaintiff may present affidavits and other written materials. *Id.* The court must decide factual disputes in favor of plaintiff at this stage of the proceeding. *Id.*

In this case, Plaintiff asserts jurisdiction is proper by way of both federal question and diversity (ECF 2). The personal jurisdiction analysis can vary slightly depending on whether Plaintiff's claims are brought pursuant to federal question jurisdiction or diversity jurisdiction. *Chen*, 2016 WL 3747584, at *1.[3] When evaluating personal jurisdiction over a defendant in a federal question case, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (internal citation omitted). The first factor looks to Federal Rule of Civil Procedure 4(h)(1) and then to each respective federal statute to determine if nationwide service of process is authorized. *Id*. The second factor "flows from the Due Process Clause of the Fifth Amendment and restricts judicial power in order to protect the individual's liberty interest." *Id*. at 1211.

The court ordered supplemental briefing to determine whether the Fifth Amendment was implicated in this case (ECF 54). The answer to the first factor, regarding service of process, determines the analysis under the second factor. If the federal statute provides for nationwide service of process, then the analysis focuses on the Fifth Amendment as opposed to the Fourteenth Amendment. *Id*. at 1210. The Fifth Amendment requires the plaintiff's choice of forum be fair and reasonable to the defendant, and there are a variety of factors to consider. *Id.* at 1211–12. If the federal statute does not allow for nationwide service of process, then the state's long-arm statute applies which implicates the Fourteenth Amendment and its minimum contacts test. *See, e.g.*,

---

[3] No party contests the amount plead and the diversity of citizenship requirements for diversity jurisdiction.

*Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 706 (N.D. Ill. 2017) ("The Defend Trade Secrets Act does not have nationwide service of process that would confer personal jurisdiction over all Defendants, therefore, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper in an Illinois court."); *Blueberry Hill LLC v. Shalom Int'l Corp.*, Case No. 2:17-cv-00385-DS, 2017 WL 5508347, at *2 (Nov. 15, 2017) ("Neither the Copyright Act, nor the Lanham Act provide for nationwide service of process. The Court therefore looks to Utah law. Utah's long-arm statute supports personal jurisdiction to the extent constitutionally permitted."); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (applying minimum contacts test because 18 U.S.C. § 1983 does not provide for nationwide service of process).

Whether nationwide service of process is availabe under the first step of the analysis requires a look at the federal claims. There are four federal claims arising from federal statutes plead in this case: trade dress infringement, false designation of origin, trademark infringement, and trade secret misappropriation. The parties focused their initial briefing on the minimum contacts test, a test rooted in the Fourteenth Amendment. As noted above, the court directed the parties to clarify whether any Fifth Amendment concerns were at issue (ECF 54). The parties provided a point supplemental brief (ECF 57), stipulating that the Fifth Amendment is not at issue and that the Fourteenth Amendment's minimum contacts test applies to each of the federal claims. The parties agree, and point to supporting case law, that each of the federal claims in this case do not allow for nationwide service of process (ECf 57 at 3–4). Therefore, Utah's long-arm statute applies and the analysis for all claims in this case are subject to the minimum contacts test.

### B. Minimum Contacts Test

To determine whether personal jurisdiction is proper, a court first looks to find minimum contacts with the forum state. *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). If minimum contacts are established, the court then determines whether exercise of personal jurisdiction would be reasonable. *Id.* The standard of reasonableness is measured by whether exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *Id.* Satisfaction of the minimum contacts and reasonableness standards may result in either general or specific jurisdiction by the court. *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1532 (10th Cir.1996).

A court may exercise general jurisdiction where the defendant's contacts with the forum state are "continuous and systematic," but do not rise to the level of traditional notions of presence in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (discussing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In this case, the parties do not assert systematic and continuous contacts so the court must look to specific jurisdiction.

A court may exercise specific jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state. *Id.* Specific jurisdiction is a two-step inquiry: (1) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (2) whether the defendant has presented a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* The first

inquiry, into minimum contacts, also has two distinct requirements: (1) that the defendant must have "purposefully directed its activities at residents of the forum state," and (2) that "the plaintiff's injuries must arise out of [the] defendant's forum-related activities." *Id.*

The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Foreseeability of causing injury in another state is insufficient to establish purposeful direction. *Id.* at 475. But where the defendant deliberately has engaged in significant activities within a State, that defendant has "availed himself of the privilege of conducting business there." *Id.* at 475–76. Accordingly, "[i]t is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id.* at 476.

The Supreme Court has looked at three frameworks to determine whether purposeful direction exists: (1) continuing relationships with forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); and (3) harmful effects in the forum state ("harmful effects"). *Old Republic Ins. Co.*, 877 F.3d at 905. In cases involving contractual contacts between the defendant and forum state residents, the purposeful direction analysis often employs the "continuing relationships" framework. *Id.* The Supreme Court "ha[s] upheld the assertion of jurisdiction over defendants who have purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* at 906 (citations omitted). A defendant's relationship with a plaintiff or third party, by itself, is insufficient. *Id.* Courts can consider "prior negotiations and contemplated future consequences," the terms of the contract, and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

A defendant's solicitations of or direct communications with forum state residents also provide "some evidence" suggesting purposeful direction. *Old Republic Ins. Co.*, 877 F.3d at 905.

In the "market exploitation" framework, an out-of-state defendant's continuous and deliberate exploitation of the forum state market may also satisfy the purposeful direction requirement. *Id.* at 906. In the case of *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the Supreme Court found purposeful direction based on an out-of-state magazine publisher's "regular monthly sales of thousands of magazines" in New Hampshire, the forum state. *Id.* at 774. The Court concluded that where the defendant "continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine." *Id.* at 781.

In the "harmful effects" framework, when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state, purposeful direction can be established, even in the absence of continuing relationships or market exploitation. *Old Republic Ins. Co.*, 877 F.3d at 907. A court may look for three factors in this framework of analysis: (1) an intentional action, that was (2) expressly aimed at the forum state, with (3) knowledge that the brunt of the injury would be felt in the forum state. *Id.* at 907. When evaluating conduct that occurs online, such as in trademark infringement cases, the Tenth Circuit has emphasized its analysis of whether the internet user or site intentionally directed its activity or operation at the forum state rather than just having the activity or operation accessible there. *Id.* at 908. "[W]e 'look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.'" *Id.* (citations omitted). The maintenance of a web site does not, by itself, subject the owner or operator to

personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state. *Shrader v. Biddenger*, 633 F.3d 1235, 1242 n. 5 (10th Cir. 2011).

If purposeful direction (and thereby minimum contacts) exists, the court must evaluate whether exercising jurisdiction would offend the traditional notions of fair play and substantial justice. For that analysis, a court considers the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Old Republic Ins. Co.*, 877 F.3d at 904–05.

All Defendants assert there are insufficient minimum contacts. The court concludes one Defendant should be dismissed for insufficient minimum contacts but the other three Defendants are subject to the personal jurisdiction of this court.

### C. Defendant Jimmy Hack Lacks Minimum Contacts

The court dismisses Defendant Jimmy Hack due to a lack of minimum contacts. Jimmy Hack is a South Carolina limited liability corporation, with its principal place of business in North Carolina (ECF 2 at ¶ 9). Defendant Wald is the Chief Operating Officer of Defendant Jimmy Hack and of Defendant Orange Whip, and he is a resident of South Carolina (ECF 2 at ¶ 11). Jimmy Hack emphasizes in its Motion that it is an out of state company that owns no business or assets in Utah. Jimmy Hack also emphasizes that it had no communications with Plaintiff, that all communications were between Plaintiff and Orange Whip, and that any communications made by Defendant Wald were made on behalf of Orange Whip.

Plaintiff asserts that personal jurisdiction over Jimmy Hack can be established for the fraud claim, trade secret claims, and unfair competition claims, and that pendent jurisdiction should

apply for all other claims (ECF 35 at 11–12). Plaintiff alleges that invoices and credit card statements show that Jimmy Hack purchased the 106 custom prototype kits, and that the prototypes were sent to Jimmy Hack, not to Orange Whip or to Defendant Wald (ECF 35-3). Plaintiff alleges that the email signatures by Defendant Wald were signed as Chief Operating Officer of Jimmy Hack or of Orange Whip, interchangeably (ECF 35 at 11–12). According to Plaintiff in its Complaint, Jimmy Hack advertised the products after receiving the 106 prototypes, with Plaintiff's trademark, on its website. (ECF 35 at 12). *But see* Complaint at ¶ 82 (ECF 1 at ¶ 82) (pointing to Defendant Orange Whip's website). Then, when a third-party manufacturer produced the products, Jimmy Hack continued to sell them on its website, but without changing the images, i.e., the trademarked images of the prototypes remained on the website when in fact the items sold were the new third-party products (ECF 35 at 12). Plaintiff also asserts that having purchased the products in Utah, Jimmy Hack necessarily knew that the impacts of any injury would be felt in Utah.

The parties do not identify which framework of analysis the court should apply to determine whether Jimmy Hack's contacts in Utah amount to purposeful direction. It does not appear from the briefing that Jimmy Hack had systematic contacts within Utah or that Jimmy Hack aimed to exploit a market specific to Utah. Rather, it appears that the contacts in Utah were isolated and specific to the purchase and shipping of the prototypes, followed by the alleged sale of the trademarked products on Jimmy Hack's website directed at the general consumer, not directed to a Utah-specific market. The court therefore applies the harmful effects framework. As noted above, a court may look for three factors: (1) an intentional action, (2) expressly aimed at the forum state, with (3) knowledge that the brunt of the injury would be felt in the forum state. *Old Republic Ins. Co.*, 877 F.3d at 907. The court can look "to indications that a defendant deliberately directed

its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.* (citations omitted).

The conduct pointed to by Plaintiff indicates that harm was felt in Utah, by Plaintiff. However, it does not appear from the pleading or the briefing that Jimmy Hack engaged in an action intended towards Utah or expressly directed its website to Utah consumers and the Utah marketplace. The court has looked at the assertions in the Complaint about whether the Jimmy Hack's website was used to post marketing materials, because marketing materials by any Defendant is a key component of several of Plaintiff's claims. Plaintiff points in its response brief (ECF 35 at 12) to Paragraph 82 of the Complaint to support its assertion that the website at issue is Jimmy Hack's. However, Paragraph 82 of the Complaint refers to two Orange Whip websites: www.orangwhipgolf.com and Orange Whip's social media pages on Instagram and YouTube (ECF 2 at ¶ 82). In conclusion, the court finds limited material in the pleadings and exhibits to indicate that the entity Jimmy Hack intentionally contacted Plaintiff or engaged in intentional conduct. Rather, it appears that Jimmy Hack's Chief Operating Officer (Defendant Wald) had the prototypes shipped to his Jimmy Hack address and there were incidental overlaps in email signatures and other logistics related to shipping.

The court understands Plaintiff's position but concludes that Jimmy Hack's conduct in this case was isolated, sparse, and not intentionally directed at a Utah market or Utah company. The court finds the intent and express aim components lacking in this instance and therefore concludes that the harmful effects framework is not satisfied. The court does not find Jimmy Hack's conduct was purposefully directed at the forum state, Utah, and therefore there are not minimum contacts for the exercise of personal jurisdiction over Jimmy Hack for the claims of fraud, trade secrets,

and unfair competition. As a result, the request for pendent jurisdiction for all other claims against

Jimmy Hack also fails. The court therefore dismiss all claims against Jimmy Hack.

### D.  Defendants Orange Whip, Wald, and Newman Have Sufficient Minimum Contacts

The court concludes there are sufficient minimum contacts over Defendnats Orange Whip,

Wald, and Newman. Defendants plead that Orange Whip, Wald, and Newman, collectively, do not

have minimum contacts for the federal claims of trade dress infringement, trademark infringement,

false designation of rights, and unfair competition under Utah statutory and common law. All three

Defendants are residents of South Carolina. Defendant Orange Whip has its principal place of

business in South Carolina (ECF 2 at ¶ 8). Defendant Wald is the Chief Operations Officer of

Orange Whip (ECF 2 at ¶ 11). Defendant Newman is the Director of Instruction and Fitness at

Orange Whip (ECF 2 at ¶ 32).

Plaintiff asserts that the conduct of these three defendants was indistinguishable. According

to the Complaint, Defendants Wald and Newman, on behalf of Orange Whip, reached out to

Plaintiff in 2019 to discuss whether Plaintiff could design and manufacture a set of custom

prototypes for Orange Whip's products (ECF 2 at ¶ 39–40). Prototypes were made, sold, shipped,

and delivered in two transactions, one for 100 prototypes and one for six prototypes (ECF 2 at ¶

45–46). Defendants Wald and Newman then began discussing an agreement for 7,500 of the

products and they asked for some changes (ECF 2 at ¶¶ 46–58). Plaintiff then shipped some revised

prototypes and negotiations continued (ECF 2 at ¶¶ 61–64).

Plaintiff asks the court to apply the harmful effects framework to determine whether the

Defendants purposefully directed conduct within the forum state. As noted above, a court may

look for three factors: (1) an intentional action, (2) expressly aimed at the forum state, with (3)

knowledge that the brunt of the injury would be felt in the forum state. *Old Republic Ins. Co.*, 877

F.3d at 907. Plaintiff points to a factually analogous case in the District of Kansas, *Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194 (D. Kans. 2016). In that case, plaintiff made custom pet beds. Plaintiff sold one pet bed to a person in California who was a close friend of the defendant. Soon thereafter, the defendant began selling similar pet beds. Plaintiff sued, alleging trade dress, unfair competition, and copyright infringement. Defendants moved to dismiss. The court applied the harmful effects test and found it was satisfied because the defendant in California, albeit indirectly through a close friend, reached out to buy the bed from the plaintiff in Kansas for a product, and began selling its own version of the bed online, knowing that plaintiff would be injured in the forum state of Kansas. *Id.* at 1205–06.

The court finds this case to be analogous to *Inspired by Design*, albeit on a larger and more significant scale. In this case, according to the Complaint and its attachments, Orange Whip, Wald, and Newman reached out directly to Hark N' Tech, soliciting prototypes for Orange Whip's use and those conversations continued. Unlike *Inspired by Design*, which involved a single transaction preceded by no negotiations, this case involves a direct solicitation for custom prototypes, which were designed and delivered in some quantity. That was followed by a request for modifications, which mere made and additional prototypes delivered. Then the parties continued to negotiate for the manufacture of 7,500 of the items.

The court agrees that based on the materials provided and the content of the Complaint, the conduct of the three Defendants (Orange Whip, Wald, and Newman) are indistinguishable. However, the Complaint describes Defendants Wald and Newman acting as agents, on behalf of Defendant Orange Whip. The materials provided by Plaintiff in its Complaint and also with its reponse (ECF 35-1 to -6) include correspondence by Wald and Newman on behalf of Orange Whip

that provides support for this conclusion. Wald and Newman made the contacts and engaged in the negotiations and modification requests on behalf of Orange Whip.

The court can find that the three Defendants engaged in intentional conduct, directed at a company inside the forum state of Utah, and it is reasonably expected that injury as a result of that conduct would be felt in Utah where Plaintiff is located. As in *Inspired by Design*, the three remaining Defendants purposefully directed their conduct in Utah thereby establishing minimum contacts in this forum state. This case is more compelling than *Inspired by Design* because in this case the contacts were direct, continuous, and ongoing. Communications and negotiations for the contract contract for 7,500 products suggested the contact would continue.

The court must next evaluate whether exercising jurisdiction would offend the notions of fair play and substantial justice. Looking at the five factors set forth in *Old Republic Ins. Co.*, 877 F.3d at 904–05, the court finds the exercise of jurisdiction is appropriate. The first factor, regarding burden on the Defendants, does not weigh significantly in their favor because of the broad availability of counsel for multi-jurisdictional practice, modern communications, and the use of video and telephone technology for court hearings. Notably, Defendants do not plead a burden. The second and third factors—the forum state's interests and the plaintiff's interest—weigh in favor of retaining jurisdiction for a Utah plaintiff. The fourth factor—the judicial system's interest in efficient resolution—also weighs in favor of retaining jurisdiction where this litigation is already underway with significant briefing and some dispositive decisions already entered. The fifth factor regarding social policies is neutral in this instance. On balance, the factors weigh in favor of retaining jurisdiction and do not suggest that the exercise of jurisdiction go against the principles of fair play and substantial justice. Rather, Defendants expressly and intentionally solicited

14

products and negotiated a contract from a Utah company over a period of time. It is not offensive to the notions of substantial justice that the Defendants face liability in this forum state.

### E. Pendant Jurisdiction

In the alternative to establishing personal jurisdiction over all parties for all claims, Plaintiff seeks to establish personal jurisdiction over a few claims and then rely on pendent jurisdiction for all other claims. Pendent personal jurisdiction "exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim . . . and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002). This is permitted so long as all claims arise from the same facts that the claims for which the court does have proper personal jurisdiction. *Id.* The Tenth Circuit has looked at whether the claims arise from the same common nucleus of operative fact. *Id.*

This issue was briefed in some detail by all parties in their initial briefs and their supplemental briefs. Plaintiff points out that Defendants did not object to personal jurisdiction for the claims of fraud, breach of contract, trade secrets, and unjust enrichment. Plaintiff therefore characterize these as their "anchor claims," and assert pendent jurisdiction should apply for the claims that Defendants dispute (trade dress infringement, trademark infringement, false designation of origin, and unfair competition). Defendants contest whether there is a common nucleus of operative facts between all of the claims (ECF 62 at 3–6). However, having decided that there is personal jurisdiction for all of the other claims (trade dress, trademark, false designation of rights, and unfair competition), pendant jurisdiction is no longer at issue.

### III. FAILURE TO STATE A CLAIM

Having found personal jurisdiction exists over the Defendants Orange Whip, Wald, and Newman, the court must consider the remainder of their Motion which seeks dismissal through Rule 12(b)(6) for failure to state a claim. Due to the complexity of the case with multiple parties and multiple claims, the court addresses each claim in the order in which it appears in the Complaint, although a few claims appear in one consolidated section consistent with the parties' briefing.

As noted above, Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive a motion to dismiss pursuant to 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The trial courts must begin their analysis under the 12(b)(6) by discounting all allegations that are no more than legal conclusions. *Moses-El v. City & Cnty. of Denver*, No. 20-1102, 2022 WL 1741944, at *7 (10th Cir. May 31, 2022). With the remaining nonconclusory factual allegations, we "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The court must construe as true all well-pleaded facts, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings. *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021).

### A. Fraud

The claim for fraud was plead against all Defendants. Only Defendants Jimmy Hack, Hackenberg, and Golf Fitness X seek to dismiss for failure to state a claim (ECF 30 at 4). The court previously dismissed Hackenberg and Golf Fitness X in a prior order (ECF 51). Jimmy Hack has been dismissed in this Order for lack of personal jurisdiction. The claim of fraud therefore survives against Defendants Orange Whip, Wald, and Newman.

### B. Breach of Contract Against Orange Whip

The claim for breach of contract is plead only against Defendant Orange Whip. Orange Whip asserts this claim must be dismissed because there was no written contract (ECF 30 at 27). "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *E.g.*, *Hampton v. Utah Transit Auth.*, No. 2:16-CV-1282-JNP-EJF, 2018 WL 1115499, at *4 (D. Utah Feb. 26, 2018). Orange Whip contests whether the facts will reflect that a contract was formed, namely whether there was a meeting of the minds, asserting that no written contract was ever executed and the parties were merely negotiating for a contract. Plaintiff avers that whether there was a meeting of the minds is a question of fact. The court agrees, recognizing the long-held law in Utah that whether there has been a meeting of the minds is a question for the trier of fact. *E.g.*, *O'Hara v. Hall*, 628 P.2d 1289 (Utah 1981).

The court has reviewed the Complaint and finds this claim adequately plead. Applying the standard of review, construing all facts in favor of the Plaintiff, the claim for breach of contract must survive the Motion to Dismiss.

### C.  Trade Dress Infringement

A claim for trade dress infringement arises under the Lanham Act, 15 U.S.C. § 1125(a). A product's trade dress "is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226–27 (10th Cir. 2007) (citations omitted). To establish a claim of trade dress infringement, a plaintiff must show: (1) the trade dress is inherently distinctive or became distinctive through secondary meaning; (2) there is a likelihood of confusion among consumers as to the source of the competing products; and (3) the trade dress is nonfunctional. *Id.* In the Tenth Circuit, likelihood of confusion is a question of fact. *Id.*

Defendants assert that the claim for trade dress has been inadequately plead because a trade dress must be nonfunctional and, according to Defendants, the only component of the Slastix Trade Dress that is nonfunctional is its orange/black color scheme (ECF 30 at 16–18). Defendants also assert the color scheme is not distinctive. (ECF 30 at 17–18). According to Defendants, these theories will defeat the trade dress claim. Both parties provide a variety of case law regarding these theories (ECF 30 at 16–17, ECF 35 at 22–26). They both also invite the court to construe the facts that were pleaded in favor of their respective positions.

The court can infer that these theories will be raised at summary judgment and after discovery. The standard for a 12(b)(6) motion however is whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. As noted above, a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plaintiff's Complaint pleads all elements of the claim and includes factual allegations about the distinctiveness, confusion, and

no functionality of the Slastix Trade Dress (ECF 2 at ¶¶ 126-37). The pleading standard has been met. Whether the facts will continue to support the claim as the matter proceeds is a question for a different stage of the proceeding.

### D. Trademark Infringement

To prevail on a claim of trademark infringement, Plaintiff must establish that (1) they have "a protectable interest in the mark; (2) that the defendant has used an identical or similar mark in commerce; and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1238 (10th Cir. 2013) (internal quotations and citations omitted). To determine whether a likelihood of confusion exists, courts consider a variety of factors: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. *Affliction Holdings, LLC v. Utah Vap or Smoke, LLC*, 935 F.3d 1112, 1115 (10th Cir. 2019).

Defendants assert there is no likelihood of confusion and focuses its argument on the facts plead in the Complaint. Defendants assert the STROOPS mark is too small, pointing to the size of the photographs reproduced in the Complaint (ECF 30 at 21). Defendants also assert that the Complaint does not plead that Defendants used the Plaintiff's STROOPS mark in their products (ECF 30 at 20). As with the trade dress infringement claim, the factual arguments go to the merits of the claim. They do not defeat the claim in a 12(b)(6) motion. The court has reviewed the Complaint and finds that it does plead that Defendants use of Plaintiff's STROOPS mark in connection with its Power Strap Products will create confusion (ECF 2 at ¶¶ 150–59). The Complaint asserts—in significant detail—that Defendants are using images of Plaintiff's product on Defendants' website, Defendants' training videos, and other marketing materials, to sell

19

Defendants' products (ECF 2 at ¶¶ 77–94). The claim has been plead. Further, the court is not persuaded by Defendants' assertion that a mark that appears small in a photograph embedded in a Complaint, which is necessarily smaller than the full-sized exercise equipment product, is proof that a trademark is too small to be infringed upon.

### E.  False Designation of Origin and Two Claims for Unfair Competition

Defendant summarily asserts that because the trade dress and trademark infringement claims must fail, that the claims for false designation of origin, the claim for unfair competition under Utah's Unfair Competition Act, and the claim for unfair competition at common law also must fail (ECF 30 at 21–22). No citation to the legal elements of these claims was provided. No other legal basis was raised in the motion to dismiss these three claims. The court briefly addresses each.

False designation of origin is a claim that arises from 15 U.S.C. § 1125(a). This claim four elements: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *John Bean Techs. Corp. v. B GSE Grp., LLC*, No. 1:17-CV-142-RJS-DAO, 2020 WL 4698984 (D. Utah Aug. 13, 2020). Plaintiff's Complaint asserts that when Defendants used Plaintiff's product, designating it as an example of Defendants' product in marketing materials that was likley to cause confusion (ECF 2 at ¶¶ 139–45). The elements of this claim have been plead. Further, having found that the trade dress and trademark infringement claims survive the Motion, the court is unable to dismiss this claim on the basis of the failure of the trade dress and trademark infringement claims that Defendants request.

The court is aware that the Utah Unfair Competition Act provides a private right of action to a person injured by unfair competition. Utah Code Ann. § 13-5a-103(1)(a). Unfair competition is defined as an intentional business act or practice that (1) is unlawful, unfair, or fraudulent; that (2) leads to a material diminution in value of intellectual property; and (3) is either a malicious cyber activity; infringement of a patent, trademark, or trade name; a software license violation; or a predatory hiring practice. *Id.* § 13-5a-102(4)(a). Plaintiff's Complaint relies on the trade dress and trademark infringement (ECF 2 at ¶¶ 165–67). Having found that the trade dress and trademark infringement claims survive the Motion, the statutory claim for unfair competition that appears to be dependent on trade dress and trademark infringement also survives.

The common law claim for unfair competition has been defined as including "passing off or attempting to pass off, upon the public, the goods or business of one person as and for the goods or business of another." *Overstock.com, Inc. v. SmartBargains, Inc.*, 192 P.3d 858, 863 (Utah 2008).

> Unfair competition as we understand it, consists in one person imitating by some device or designation the wares made and sold by another for the purpose of palming off or substituting his wares for those of the other, and in that way misleading the purchaser by inducing him to buy the wares made and sold by the first instead of those by the second.

*Id.* (citations omitted). In proving this claim, "[i]t is enough if it be shown that there is the probability of confusion or deception." *Id.* (citations omitted). Plaintiff's Complaint asserts that Defendants are using Plaintiff's product in their marketing materials which is "passing off" Plaintiff's products as Defendant's products and  is intentionally confusing to consumers (ECF 2 at ¶¶ 169–73). Unlike the statutory claim, this common law claim is not dependent on the success of an underlying trade dress and trademark infringement claim. Rather, it appears that the common claim is actionable even if a product is not trademarked. As a result, Plaintiff's claim for common

21

law unfair competition survives the Motion to Dismiss regardless of the outcome of the trade dress and trademark infringement claims.

### F.  Trade Secret

Defendant contests whether there is a valid and protectible trade secret warranting protection under Utah Code § 13-214-1 and federal law at 18 U.S.C. § 1836 *et seq.* For the state law claim, the proponent of the trade secret must show: (1) the existence of a trade secret, (2) communication of the trade secret to [the defendant] under an express or implied agreement limiting disclosure of the secret, and (3) [defendant]'s use of the secret that injures [the proponent].' " *Mint Solar, LLC v. Savage*, No. 2:18-CV-569 TS-PMW, 2018 WL 5924410, at *5 (D. Utah Nov. 13, 2018) (citations omitted). A trade secret is:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Utah Code Ann. § 12-24-2(4). For the federal claim, the Defend Trade Secrets Act provides that a "trade secret" includes "information that derives value from being secret and that the owner took reasonable measures to keep secret." 18 U.S.C. § 1839(3)(A), (B).

Again, Defendants assert a variety of factual disputes and invites the court to construe the facts in the Complaint in favor of Defendants, *i.e.*, to determine there was no trade secret and therefore neither trade secret claim may survive. That is not the standard for a 12(b)(6) motion. Plaintiff's Complaint pleads all elements of the claim and includes factual allegations about the distinctiveness, confusion, and no functionality of the Slastix Trade Dress (ECF 2 at ¶¶ 177–98).

The court is obligated to construe well-pleaded facts in favor of Plaintiff at this point of the proceedings. The pleading standard has been met. Whether the facts will continue to support the claim as the matter proceeds is a question for a different stage of the proceeding.

### G. Unjust Enrichment

Defendants also seek dismissal of the unjust enrichment claim. The elements of unjust enrichment are: (1) there was a benefit conferred on one person by another; (2) the conferee must appreciate or have knowledge of the benefit; and (3) "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Mint Solar, LLC.*, 2018 WL 5924410, at *4.

Defendants assert the claim of unjust enrichment must be dismissed because the prototypes were only delivered to Orange Whip, not to Wald or Newman. Thus, they assert Wald and Newman did not retain anything by which they were unjustly enriched. Plaintiff avers that this is a disputed fact and the issues of agency by Wald and Newman for Orange Whip remain (ECF 35 at 29–30). Plaintiff also contests whether the delivery was to only one party is a fact outside the Complaint, having been submitted related to personal jurisdiction. To evaluate personal jurisdiction, the court can consider matters outside the pleadings, such as the papers attached to Defendant's motion. For the 12(b)(6) motion, the court is not to consider facts outside the complaint without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d).

The court has not considered the materials outside the Complaint that were filed with the Motion and its repsonse in the court's consideration of the 12(b)(6) motion. As a result, the court finds the claim is adequately plead and survives the Motion to Dismiss. As the parties proceed through discovery, the court encourages the parties to evaluate whether this claim remains against all Defendants or just Orange Whip.

**IV. ORDER**

For the foregoing reasons, the undersigned concludes that the Motion to Dismiss (ECF 30) is GRANTED IN PART—Defendant Jimmy Hack is dismissed. The Motion to Dismiss is also DENIED IN PART—the court has personal jurisdiction over all remaining Defendants and all claims have been adequately pled.

IT IS SO ORDERED.

DATED this 16 August 2022.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah