# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| HARK'N TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br><br>ORANGE WHIP FITNESS X, LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ON:**<br>**[364] MOTION FOR NEW TRIAL,**<br>**[366] MOTION TO RECONSIDER, AND**<br>**[369] MOTION TO STRIKE**<br><br><br>Case No. 1:21-cv-00054-CMR<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendant Orange Whip Fitness X, LLC's (Orange Whip) Motion for New Trial on the Trade Dress and Utah Unfair Competition Claims, or in the Alternative to Set Aside the Jury Verdict or Stay the Judgment Pending Appeal (Motion for New Trial) (ECF 364). Related to the Motion for New Trial is Plaintiff Hark'n Technologies Inc.'s (Hark'n) response (ECF 388), and Orange Whip's reply (ECF 398). Also before the court is Orange Whip's Motion to Reconsider ECF 251 Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment (Motion to Reconsider) (ECF 366). In response, Hark'n filed a Motion to Strike Orange Whip's Motion to Reconsider (Motion to Strike) (ECF 369). The court has also considered Orange Whip's opposition to the Motion to Strike (ECF 389), and Hark'n's reply (ECF 400). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and decides these matters on the written memoranda. *See* DUCivR 7-1(g). For the reasons set forth below, the court DENIES Orange Whip's Motion for New Trial (ECF 364), DENIES Orange Whip's Motion to Reconsider (ECF 366), and DENIES as moot Hark'n's Motion to Strike (ECF 369).

1

# I.    BACKGROUND[1]

Following a weeklong trial, a jury reached a verdict in favor of Hark'n on its claims for trade dress infringement, unfair competition, and unjust enrichment (ECF 300).[2] The jury found that Hark'n had proven it has a protectable trade dress, and that Orange Whip is liable for willful trade dress infringement under the Lanham Act (*id.*). The jury also found that Orange Whip willfully engaged in unfair competition under Utah common law (*id.*).

At trial, Hark'n presented evidence related to the product at issue—orange elastic exercise bands bearing its asserted trade dress (Orange Trade Dress) (ECF 314 at 41–178; ECF 315 at 7–54). Central to Hark'n's case-in-chief was testimony from the owner of Hark'n, Shon Harker (ECF 314 at 41–178; ECF 315 at 7–54). Mr. Harker testified that Hark'n has sold bands bearing the Orange Trade Dress under its brand "Stroops" for a number of years, and he identified images in Exhibit 34 as containing visual depictions of the Orange Trade Dress (ECF 314 at 44, 52–53, 62; Pl. Ex. 34).[3] Mr. Harker testified about the Orange Trade Dress's history, manner of use, sales volume, and the company's choice to use the color orange specifically for the Stroops brand (ECF 314 at 51–53). He further testified that the Orange Trade Dress can be found on the Stroops website and that it is prominently displayed at trade shows, and he provided an estimate of the associated marketing costs (*id.* at 54–55). For a time during this litigation, Hark'n appeared to be asserting a black trade dress in addition to the Orange Trade Dress (*see, e.g.*, ECF 2 at 34), but during his testimony, Mr. Harker discussed the black bands and made clear Hark'n was not

---

[1] Given the court's and the parties' familiarity with the facts and procedural history of this dispute, the court will reiterate only the facts and procedural history relevant to the instant motions. A more fulsome description is included in previous court orders (*see, e.g.*, ECF 160 & ECF 251 (memorandum decisions ruling on the motions for summary judgment)).

[2] Orange Whip's Motion for New Trial pertains only to the trade dress and unfair competition claims and contains no references to the jury's verdict on the unjust enrichment claim.

[3] An attorney for Hark'n, Steve Bean, also testified at trial, providing a description of the Orange Trade Dress, and answered questions regarding what Hark'n has done "to distinguish that product from competitors" (ECF 315 at 73).

asserting a claim against Orange Whip with regard to any black trade dress (ECF 314 at 63). During cross-examination, counsel for Orange Whip asked Mr. Harker whether he had "provided something for [his] attorney to share with this jury about actual confusion" between Hark'n's Orange Trade Dress and Orange Whip's product (*id.* at 157–158). Mr. Harker responded in the affirmative, stating he had received phone calls from "four, five or six people" who associated the color "orange" with Hark'n's products (*id.*). Counsel attempted to strike Mr. Harker's answer, but the court denied this request (*id.*).

The jury also heard about the origins of the relationship between Hark'n and Orange Whip (*id.* at 61). In early 2019, the parties were in negotiations to enter into a contract under which Hark'n would manufacture orange elastic bands that Orange Whip would incorporate into its package of golf-related exercise equipment offered to its customers (*id.* at 61–78). During these early negotiations, Hark'n created prototypes of the elastic bands bearing the Orange Trade Dress that would be the focus of the manufacturing arrangement, which Orange Whip purchased to use in its advertisements and to sell to its customers (ECF 314 at 65, 88–89; ECF 315 at 102–03, 112). Videos and still images of Orange Whip's use of Hark'n's product in these promotional campaigns were presented to the jury (ECF 315 at 111–13; Pl. Exs. 36, 37, 38). When negotiations failed to result in an enforceable contract, Orange Whip took the prototypes made by Hark'n and sent them to another supplier, Ideal Joy[4] (Pl. Ex. 16). Orange Whip then asked Ideal Joy to manufacture similar elastic bands (*id.*), which Orange Whip then began selling to its customers. During the manufacturing process, Ideal Joy sent follow-up questions to Orange Whip asking whether certain specifications should be the "same" as the samples (Pl. Ex. 16 at 17). In response to each question, Orange Whip indicated the product should be the "same" as Hark'n's prototypes, but "similar"

---

[4] Ideal Joy is a "Taiwanese manufacturer" (ECF 315 at 107). Hark'n has maintained that it has a "25-year established market presence and 13-year presence as the only U.S. manufacturer of orange sheathed elastics" (ECF 388 at 32).

would also be fine (*id.*).The COO of Orange Whip further testified that while "the videos and still shots" of Hark'n's products were on Orange Whip's website, "the bands that [Orange Whip] were selling were the bands that were supplied by Ideal Joy" (ECF 315 at 114). The jury was also presented with images of the orange bands that Ideal Joy manufactured for Orange Whip[5] (*see, e.g.*, Pl. Exs. 14, 14.1).

As noted above, the jury returned a verdict in favor of Hark'n on all counts (ECF 300). Prior to the matter being submitted to the jury, Orange Whip never moved pursuant to Federal Rule of Civil Procedure 50 for judgment as a matter of law.

## II.    DISCUSSION

### A.  Motion for New Trial or in the Alternative Set Aside the Verdict or Stay the Judgment

#### 1.  Motion for New Trial or to Set Aside the Verdict

Orange Whip seeks a new trial or an order setting aside the verdict pursuant to Rules 59(a), 59(e), and 60(b) of the Federal Rules of Civil Procedure (ECF 364). The issues primarily raised by Orange Whip in support of a new trial or setting aside the verdict concern the weight of the evidence and the correctness of the instructions and special verdict form given to the jury. First, the court addresses the applicable legal standards and Hark'n's arguments regarding the procedural deficiencies of Orange Whip's motion. Next, the court addresses Orange Whip's challenge to the weight of the evidence and, finally, addresses challenges raised to the jury instructions and special verdict form.

---

[5] In addition to Ideal Joy, later on, Orange Whip made an arrangement with a different company, Worldwide Fitness, to manufacture orange bands (ECF 315 at 145–48, 161; Pl. Ex. 17). For simplicity, when referring to third parties that Orange Whip commissioned to manufacture the orange bands, the court refers only to Ideal Joy.

*a. Legal standards and procedural issues*

Hark'n asserts that because Orange Whip "never raised a Rule 50(a) motion or any relevant objection to challenge the sufficiency of evidence," Orange Whip "has waived its ability to do so post-trial" (ECF 388 at 6). Rule 50(a) governs motions for judgment as a matter of law, which "may be made at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If a motion under Rule 50(a) is denied, Rule 50(b) provides that, after trial, "the movant may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b). "In combination, Rule 50(a) and Rule 50(b) limit the scope of posttrial motions for judgment as a matter of law to those issues presented to the court before the jury deliberates." *Braun v. Medtronic Sofamor Danek, Inc.*, 141 F. Supp. 3d 1177, 1183 (D. Utah 2015), *aff'd*, 719 F. App'x 782 (10th Cir. 2017). Indeed, before the court may consider such a challenge to the sufficiency of the evidence under Rule 50(b), "it is mandatory that a party first raise a ground for judgment as a matter of law in a Rule 50(a) motion." *Mountain Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1136 (10th Cir. 2019).

In this matter, there is no question that Orange Whip failed to move under Rule 50(a) for a directed verdict and thus cannot make a renewed motion under Rule 50(b). Courts have been clear that such a failure presents a procedural bar on a party's ability to challenge the sufficiency of the evidence. As noted by the Tenth Circuit, "compliance with the requirements of Rule 50 is mandatory." *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, 827 F.3d 1256, 1265 (10th Cir. 2016). Thus, a party is deemed to have "waived any right to a new trial on the basis of insufficiency of the evidence by failing to raise the issues in its Rule 50(a) motions." *Been v. O.K. Indus., Inc.*, 398 F. App'x 382, 394 (10th Cir. 2010). This is supported by the United States Supreme Court's finding that "failure to comply with Rule 50(b) forecloses [a party's] challenge to the sufficiency of the evidence." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006). Yet,

in an unpublished opinion, the Tenth Circuit has also stated that "while the failure to move for [judgment as a matter of law] at the close of the evidence bars subsequent challenges to its legal sufficiency, there is no such prerequisite to a post-trial motion for new trial on the ground that the jury's verdict is *against the weight of the evidence*." *Dunlop Tire Corp. v. I.M.E. of Miami, Inc.*, 232 F.3d 900 (10th Cir. 2000) (emphasis added) (citing *Ketchum v. Nall*, 425 F.2d 242, 243 (10th Cir. 1970)). Other circuits have likewise reached this conclusion. *See, e.g.*, *Harbor Bus. Compliance Corp. v. Firstbase.io, Inc.*, No. 25-1278, 2025 WL 2462662, at *10 (3d Cir. Aug. 18, 2025) ("A party's failure to move for judgment as a matter of law at the close of all evidence does not bar a motion for a new trial on the ground that the verdict was against the weight of the evidence."); *Freund v. Nycomed Amersham*, 347 F.3d 752, 765 (9th Cir. 2003) ("Unlike a motion for judgment as a matter of law, a motion for new trial does not have to be preceded by a Rule 50(a) motion prior to submission of the case to the jury."); *Jones v. Miles*, 656 F.2d 103, 106 n.1 (5th Cir. 1981) ("[A] motion for a directed verdict is not prerequisite to a motion for a new trial or a review of the motion's denial.").

Given the case law on this issue, the court agrees with Hark'n that Orange Whip cannot seek a new trial based on a challenge to the sufficiency of the evidence under Rule 50. However, the court is not persuaded that the case law goes so far as to bar all challenges under Rule 59 regarding the weight of the evidence because of a party's failure to assert a motion under Rule 50. In support of this, the court notes that these are separate and distinct rules for which different standards apply. For example, in assessing motions under Rule 59, this court has pointed out that "'[t]he standard for granting a motion for a new trial is less stringent than the standard applied' to a Rule 50 motion for judgment as a matter of law." *Braun*, 141 F. Supp. 3d at 1192 (quoting *Megadyne Med. Prods., Inc. v. Aspen Labs., Inc.*, 864 F.Supp. 1099, 1102 (D. Utah 1994)). While

Rule 50 provides a narrower basis for relief, Rule 59 provides several grounds under which a new trial may be granted, including "where the jury verdict is against the weight of the evidence, the damages are excessive, a party was prejudiced by erroneous evidentiary rulings, or the trial was not fair to the moving party." *Id.* (quoting *Megadyne*, 864 F.Supp. at 1102). But even though "the grounds for granting a new trial are potentially broad, motions of this kind 'are generally disfavored, and should only be granted with great caution.'" *Id.* (quoting *Klein–Becker USA, LLC v. Englert*, 2011 WL 4079225 (D. Utah Sept. 13, 2011)). Thus, "[t]o give rise to a new trial, claimed error must be clear, prejudicial to the moving party, and must affect substantive rights." *Id.* With that in mind, the court will consider Orange Whip's arguments asserted under Rule 59 that the verdict is against the weight of the evidence.[6]

In addition to its waiver arguments, Hark'n points out that Orange Whip's motion "appears to seek relief primarily under Rule 59(e) and 60(b)(6)" and "[b]oth rules presuppose that a 'final judgment' has been entered before relief may be sought" (ECF 388 at 13). Thus, Hark'n asserts Orange Whip's motion is premature.

A motion filed under Rules 59(b) or 59(e) must be filed "no later than 28 days after the entry" of judgment. *See* Fed. R. Civ. P. 59. As Hark'n points out, judgment has not yet been entered in light of the pending motions relating to disgorgement (*see* ECF 328 & 329). In other matters, where a motion under Rule 59(e) was filed prior to judgment being entered, this court has found that "Rule 59(e) technically has no application." *Lake Town Towing v. Utah*, No. 2:23-cv-00818-JNP-CMR, 2025 WL 1880481, at *1 (D. Utah July 8, 2025). On the other hand, Orange Whip

---

[6] The court also finds it important to note that appellate courts apply different standards of review to a trial court's denial of a Rule 50 motion versus the denial of a Rule 59 motion. The Tenth Circuit "review[s] de novo a district court's denial of a Rule 50(b) motion, drawing all reasonable inferences in favor of the nonmoving party," while the denial of a motion under Rule 59 is reviewed "for abuse of discretion." *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 761–62 (10th Cir. 2009).

points to the advisory committee notes to Rule 59 (ECF 398 at 4), which indicate that "[t]he phrase 'no later than' is used--rather than 'within'--to include post-judgment motions that sometimes are filed before actual entry of the judgment by the clerk," *see* Fed. R. Civ. P. 59 advisory committee's note to 1995 amendment. While each party has presented persuasive authority on this point, the court finds it appropriate in this matter to address the issues raised in Orange Whip's motion. A primary reason being that if the court were to deny Orange Whip's motion as premature, Orange Whip could refile the motion once judgment is entered. Since the arguments of both parties on this point have been fully briefed, the court finds it would be in the interest of judicial economy to address those arguments in the instant ruling.

Hark'n raises similar timing arguments regarding Rule 60(b). Under Rule 60, a party may seek relief "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). A jury's verdict however is not necessarily considered a judgment or final order. *See, e.g.*, *Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour Mills Co.*, 257 F.2d 93, 104 (10th Cir. 1958); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1380 (10th Cir. 2009) ("A final decision 'is a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting *Utah ex rel. Utah State Dept. of Health v. Kennecott Corp.*, 14 F.3d 1489, 1492 (10th Cir. 1994))). And where a verdict or order does not constitute "a final order," it "is not subject to Rule 60(b)." *See North v. Ford Motor Co.*, No. 2:00-cv-958 TS, 2007 WL 391578, at *1 (D. Utah Feb. 1, 2007) (citing *Raytheon Constructors Inc. v. ASARCO, Inc.*, 368 F.3d 1214, 1217 (10th Cir. 2003)); *see also* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule[.]"). Again, the court finds it would

be in the interest of judicial economy to address Orange Whip's arguments under Rule 60 now rather than wait for Orange Whip to reassert those arguments once judgment has been entered.

With regard to the standard that applies to Orange Whip's motion under Rule 60(b), the Tenth Circuit has acknowledged that relief pursuant to this rule "is extraordinary and may only be granted in exceptional circumstances." *Ridley v. Bd. of Sedgwick Cnty. Commissioners*, 775 F. App'x 454 (10th Cir. 2019) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999)). Where a party invokes Rule 60(b)(6), the "catchall provision," relief is only warranted under circumstances that are "'so unusual or compelling' that they offend justice." *Gaddy v. Church of Jesus Christ of Latter-day Saints*, No. 2:19-cv-00554-RJS, 2023 WL 4763981, at *6 (D. Utah July 26, 2023) (quoting *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 590 (10th Cir. 1996)).

With those principles in mind, the court now turns to the substance of Orange Whip's request for a new trial or to set aside the verdict.

### b. The weight of the evidence

Orange Whip argues the court should grant a new trial or set aside the verdict under Rules 59(e) and 60(b), because Hark'n's case at trial "rest[ed] on pure conjecture" and the verdict was "against the weight of the evidence" (ECF 364 at 11). For the reasons set forth below, the court finds Orange Whip's arguments regarding the weight of the evidence unavailing.

At the outset, the court notes that "Rule 60(b) relief is not available to allow a party merely to reargue issues previously addressed by the court." *Clearone Commc'ns, Inc. v. Chiang*, No. 2:07-cv-37TC, 2009 WL 2170041, at *6 (D. Utah July 20, 2009) (quoting *Allender v. Raytheon Aircraft Co.*, 439 F.3d 1236, 1242 (10th Cir. 2006)). Thus, a party's "dissatisfaction with the jury verdict and final judgment does not qualify [it] for the extraordinary relief [it] seeks." *Id.* Many of the arguments Orange Whip raises are reiterations of arguments previously addressed by

the court in ruling on Orange Whip's motions for summary judgment (*see* ECF 160; ECF 251). The court does not find it necessary to address each of those arguments at length in ruling on the present motion; instead, it opts to address a few select points and incorporates by reference the remainder of its reasoning from the earlier rulings.

Where "a new trial motion asserts that the jury verdict is not supported by the evidence," the Tenth Circuit has made clear that "the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (quoting *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir. 1999)). Orange Whip's motion focuses on the elements necessary to prove a claim for trade dress infringement.[7] A trade dress infringement claim requires that a plaintiff demonstrate: "(1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional." *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007) (citing *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002)). A plaintiff asserting trade dress infringement must also satisfy the threshold requirement of "articulat[ing] the design elements that compose the trade dress." *Hammerton, Inc. v. Heisterman*, No. 2:06-cv-00806 TS, 2008 WL 2004327, at *3 (D. Utah May 9, 2008) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001)). Orange Whip asserts that Hark'n failed to meet the threshold articulation requirement and that the evidence did not establish any of the three elements of this claim.

---

[7] Notably, Orange Whip's motion asks for a new trial based on Hark'n's trade dress claim and its unfair competition claim under Utah common law. However, Orange Whip does not include in the Motion for New Trial any case law addressing the elements of unfair competition under Utah law and appears to rely on the assumption that the elements for that claim overlap with the elements of a trade dress infringement claim. As is apparent from the jury instructions, the elements of these two claims are not identical (*see* ECF 299), and Orange Whip has not demonstrated that the jury's verdict was against the weight of the evidence regarding the unfair competition claim.

Orange Whip's first challenge argues that Hark'n "offered an inconsistent or generic articulation of its orange trade dress" (ECF 364 at 16). As Hark'n points out (ECF 388 at 20), the court previously rejected this argument in ruling on the dispositive motions. Earlier in these proceedings, the court found that Hark'n had "asserted and provided some evidence to demonstrate that, since 2012, it has used the orange trade dress as described in the Complaint in relation to its STROOPS products" (ECF 251 at 9). Based on the evidence presented at trial (*see, e.g.*, ECF 314 at 8, 21, 62; Pl. Ex. 34), which included the exhibits the court considered in ruling on the dispositive motions (*see* ECF 251), the court again agrees with Hark'n that it has sufficiently articulated the elements that compose the Orange Trade Dress.

The court further finds that there is no merit to Orange Whip's contention that the jury was unable to view the elements that comprise Hark'n's trade dress. Orange Whip asserts that the jury was left to speculate what entailed the Orange Trade Dress because it was never given a "physical sample" of Hark'n's product (ECF 364 at 17). The court rejects this argument, as Orange Whip has not presented the court with any case law to support its position that a physical sample is a mandatory requirement for a jury to render a verdict on a claim for trade dress infringement.[8] At trial, the jury was able to consider numerous exhibits of Hark'n's Orange Trade Dress through photographs and video evidence.[9] The court thus finds that the evidence at trial adequately established the threshold articulation requirement for a trade dress infringement claim.

---

[8] The court further notes that it was Orange Whip that filed a Motion in Limine seeking to exclude representative samples from trial, which motion was granted (ECF 277 at 12-13). No argument was presented at that time that a physical sample was a mandatory requirement for a jury to render a verdict in Hark'n's favor on the trade dress claim, which the court would have expected given the professional responsibilities of counsel. *See* DUCivR 83-1.1(d)(1); Utah R. Prof'l Conduct 3.3.

[9] *See, e.g.*, Pl. Ex. 8 at 22–23 (photos taken from Orange Whip's website of Hark'n's Orange Trade Dress, including the STROOPS logo), Pl. Ex. 15 at 12, 51, 204–205 (emails of images of the Orange Trade Dress); Pl. Ex. 16 at 5 (emails between Ideal Joy and Orange Whip with photos of the Orange Trade Dress); Pl. Ex. 34 at 1–16, 24–39, 45–49, 57–60, 62, 67–70) (numerous photos of the Orange Trade Dress); Pl. Ex. 38 (Orange Whip's promotional video that includes various depictions of the Orange Trade Dress being used along with other Orange Whip products).

Next, Orange Whip turned to the first element of trade dress infringement, that "[t]he trade dress is inherently distinctive or has become distinctive through secondary meaning." *Gen. Motors*, 500 F.3d at 1227. To demonstrate secondary meaning, a party may rely on circumstantial evidence including: "(1) the length and manner of the trade dress's use; (2) the nature and extent of advertising and promotion of the trade dress; (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the trade dress and a particular product; (4) actual consumer confusion; (5) proof of intentional copying; or (6) evidence of sales volume." *Kodiak Cakes LLC v. Cont'l Mills, Inc.*, 358 F. Supp. 3d 1219, 1229 (D. Utah 2019) (citing *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1148 (10th Cir. 2016)). While one category of evidence, such as proof of intentional copying, may not by itself demonstrate that a product has acquired a second meaning, the Tenth Circuit has advised that under certain circumstances the confluence of two or more categories of such evidence may be sufficient. *See, e.g.*, *Sally Beauty*, 304 F.3d at 978. Here, the court finds that the weight of the evidence was not against finding that the Orange Trade Dress had acquired secondary meaning.

At trial, the jury heard from Mr. Harker regarding the Orange Trade Dress's history, manner of use, sales volume, and the choice to use the color orange specifically for the Stroops brand (ECF 314 at 51–53; ECF 315 at 75). Mr. Harker testified about the orange branding found on the Stroops website and at trade shows, along with the associated marketing costs (ECF 314 at 54–55). With this testimony and the related exhibits, the jury had at least some circumstantial evidence related to five of the relevant categories that speak to secondary meaning. The jury also had some evidence related to proof of intentional copying. Of particular significance were the communications between Orange Whip and Ideal Joy, which were admitted into evidence (*see* Pl. Ex. 16). Those conversations provide insight into Orange Whip's intentions when it sent Hark'n's

products to Ideal Joy (*id.*). Ideal Joy sent follow-up questions to Orange Whip asking whether certain specifications should be the "same" as the samples (*id.* at 17). In response to each question, Orange Whip indicated the product should be the "same" as Hark'n's prototypes, but "similar" would also be fine (*id.*). Based on these conversations, it would be reasonable for the jury to conclude that Orange Whip intended to copy Hark'n's Orange Trade Dress.[10] While the court acknowledges that the jury could have found that Hark'n failed to establish secondary meaning, it cannot go so far as to find that the jury's finding on this point is overwhelmingly against the weight of the evidence.

The second element of trade dress infringement, which Orange Whip also believes was not proven at trial, is that "[t]here is a likelihood of confusion among consumers as to the source of the competing products." *Gen. Motors*, 500 F.3d at 1227. "In determining whether a likelihood of confusion exists," a variety of factors are considered, "including: (1) the degree of similarity between the products; (2) the intent of the alleged infringer in designing its product; (3) evidence of actual confusion; (4) similarity in how the products are marketed; (5) the degree of care likely to be exercised by purchasers; and (6) the strength of the trade dress." *Id.* According to Orange Whip, the weight of the evidence is against finding that a likelihood of confusion exists. The court disagrees.

At trial, the jury was presented with various photographs and videos of Orange Whip's product and Hark'n's Orange Trade Dress to compare the degree of similarity between the products

---

[10] The court notes that the bands Hark'n sold to Orange Whip have a black stripe running the length of the bands (ECF 314 at 165), and Orange Whip asked Ideal Joy to remove the black stripe (ECF 319 at 90; Def. Ex. 1007 at 36). The jury was presented with this information and was able to view images of Hark'n's product and Orange Whip's product side by side in the exhibits that they had with them during deliberation. The jury could have viewed this request to remove the black stripe as an attempt by Orange Whip to differentiate its product from Hark'n's, but in considering the evidence as a whole, it was not against the weight of the evidence for the jury to find that Orange Whip's copying was intentional.

and could assess for itself the strength of the trade dress[11] (*see, e.g.*, Pl. Exs. 7, 14, 15, 16, 25, 34, 37, 38). Moreover, from the emails between Orange Whip and Ideal Joy, the jury could discern Orange Whip's intent in designing its product, and that it be the "same" or as similar as possible to Hark'n's Orange Trade Dress (Pl. Ex. 16). In contrast to these emails, Orange Whip asserts that its representatives "credibly testified that they did not intend to cause confusion or deceive consumers" (ECF 364 at 32). However, it was up to the jury to determine the credibility of witnesses, and the court will not invade the province of the jury, whom it appears were not persuaded by the testimony of Orange Whip's representative. *See Brooks v. Colorado Dep't of Corr.*, No. 1:13-cv-02894-SKC, 2024 WL 1051947, at *3 (D. Colo. Mar. 11, 2024) ("It was the jury's provenance as fact-finder to determine witness credibility, weigh the evidence, draw inferences, resolve conflicts, and ultimately determine the facts.") (citing *Prager v. Campbell Cnty. Mem'l Hosp.*, 731 F.3d 1046, 1063 (10th Cir. 2013)). In looking at the weight of the evidence presented at trial, the court finds it was reasonable for the jury to find that several of the relevant factors related to consumer confusion weighed in Hark'n's favor including: (1) the degree of similarity between the products, (2) the intent of the alleged infringer in designing its product, and (3) the strength of the trade dress.

Furthermore, the jury was presented with some limited evidence of actual consumer confusion. As discussed above, in ruling on pretrial motions, the court granted Orange Whip's request to exclude "any evidence or argument related to actual consumer confusion" (ECF 277 at 14–15). The court granted the motion primarily on the basis that any such evidence had not been disclosed during discovery (*id.*). Consistent with that ruling, Hark'n did not present evidence of

---

[11] As noted above, Hark'n's product has a black stripe running the length of the band, and Orange Whip's product does not have a black stripe, *see supra* note 9. As the factfinder, the jury was in the best position to determine whether the black stripe, or lack thereof, was significant enough to differentiate the two products from each other.

actual consumer confusion during its presentation of evidence. Nevertheless, at trial, while cross-examining Mr. Harker, counsel for Orange Whip asked whether he had "provided something for [his] attorney to share with this jury about actual confusion" (ECF 314 at 157–158). Mr. Harker responded in the affirmative, stating he had received phone calls from "four, five or six people" who associated the color "orange" with Hark'n's products (*id.*). Counsel attempted to strike Mr. Harker's answer, but the court denied this request[12] (*id.*). Orange Whip did not directly address this testimony in its motion or in its reply, but the court notes again that it was the jury's responsibility to determine Mr. Harker's credibility, and Orange Whip has presented no reasoning for the court to make a *post hoc* determination that this testimony should have been discounted. *See Brooks*, 2024 WL 1051947, at *3. With this evidence of actual consumer confusion, combined with the rest of the evidence presented at trial, the court does not find that the jury's apparent findings regarding the likelihood of consumer confusion were against the weight of the evidence.

Finally, with regard to the third element of trade dress infringement, Orange Whip asserts that Hark'n does not have a protectable trade dress because the evidence demonstrates that the Orange Trade Dress is functional (ECF 364 at 19). Orange Whip's primary position regarding functionality was rejected by the court in its rulings on the motions for summary judgment, and the court found that Hark'n had established a genuine issue of material fact regarding functionality (*see* ECF 251 at 15). In reaching this conclusion, the court relied, in part, on Judge Cassell's ruling in *Hark'n Techs., Inc. v. Today's Fitness Prods., Inc.*, No. 1:07-cv-00080-PGC, 2007 WL 2668878 (D. Utah Sept. 6, 2007) (*id.*). In *Today's Fitness* (a case where Hark'n was asserting a claim of trade dress infringement against a different defendant), the question before the court concerned a black elastic sleeve, which was ultimately found to be "not functional." *Id.* at *2. The court noted

---

[12] Orange Whip does not assert that the court erred in overruling this objection.

that "the trade dress here is a composite of the several features," thus the issue was whether, "as combined, the features are functional." *Id.* In support of its ultimate finding, the court explained that the black sleeve "is not essential to the use or purpose of the product, will have a marginal effect of showing dirt, and there is no indication that it affects the cost." *Id.* Applying this same reasoning here, the court found Orange Whip's argument that the color orange is "functional" unavailing, and that, as combined, a reasonable person could find that the features of the trade dress at issue were nonfunctional (ECF 251 at 15–16).[13]

Taking into consideration the court's ruling in *Today's Fitness*, in conjunction with the evidence presented at trial, the court disagrees with Orange Whip that the weight of the evidence is against functionality. The jury heard, among other things, Mr. Harker testify that there is not "anything functional about the color orange" (ECF 314 at 49). He further indicated that, in manufacturing the Orange Trade Dress, he found through experimentation that there are "many" different "fabrics and textures and weaves" to choose from (*id.* at 48–49). The court is aware of Orange Whip's position that the color orange serves functional purposes, "including high visibility, attract[s] attention, customer preferences, [and] sales" (ECF 364 at 23), and Orange Whip argued this position at trial (ECF 302 at 44–45). But the jury had enough evidence before it from which it could reasonably conclude that the color orange is nonfunctional.

Orange Whip's motion also focused on Hark'n's "expired utility patent," which it believes demonstrates the trade dress is functional (ECF 364 at 6, 13, 15–16, 20). Relevant case law dictates that a utility patent is "strong evidence that the features therein claimed are

---

[13] In another motion filed post-trial, Orange Whip challenges this court's ruling on summary judgment and its application of the reasoning in *Today's Fitness* to the present matter (ECF 366 at 15). Orange Whip accuses the court of "misunderstanding that 'the same black sleeve' at issue [in *Today's Fitness*] was also a product in this matter" (*id.*). Despite this accusation, this court fully understood at the time of ruling on the dispositive motions the similarities and differences between the products at issue in *Today's Fitness* and the product at issue here that was presented to the jury. With that understanding, the court is not persuaded that it was against the weight of the evidence for the jury to find Hark'n's Orange Trade Dress is nonfunctional.

functional," but this does not foreclose the possibility of a party establishing trade dress protection. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29–30 (2001). A party may still establish "that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 30. Hark'n asserts that its expired patent is far from dispositive in this matter and points out the patent "only addresses how the elastic is attached *inside* the sheathing," and Ideal Joy even communicated to Orange Whip "it could completely avoid the patent and still maintain the same '*look*' as the samples sent for copying" (ECF 388 at 29; Pl. Ex. 7 at 50). What's more, Hark'n points out that its expired patent "says nothing about color, and nothing about the shape of a baggy crinkled appearance for the sheathing" (ECF 388 at 29). Based on these facts and the arguments presented by each side at trial, the court does not find that the weight of the evidence mandated that the jury find the Orange Trade Dress is functional because of the expired patent.

In a similar vein, Orange Whip asserts the weight of the evidence demonstrates the Orange Trade Dress is not protected because of its aesthetic functionality (ECF 364 at 14). The Restatement (Third) of Unfair Competition states that "[w]hen aesthetic considerations play an important role in the purchasing decisions of prospective consumers, a design feature that substantially contributes to the aesthetic appeal of a product may qualify as 'functional.'" Restatement (Third) of Unfair Competition § 17 cmt. c (Am. L. Inst. 1995). The "'ultimate test of aesthetic functionality,'. . . 'is whether the recognition of trademark rights would significantly hinder competition.'" *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 170 (1995) (quoting Restatement (Third) of Unfair Competition § 17 (Am. L. Inst. 1995)). Some courts have recognized that "[a] design has aesthetic functionality when it communicates the use, purpose, cost, or quality of the product in a way that competitors cannot avoid replicating without incurring

costs 'not to copy but to design around.'" *Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 737 (6th Cir. 2018) (quoting *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 642 (6th Cir. 2002)); *see also W.T. Rogers Co. v. Keene*, 778 F.2d 334, 343 (7th Cir. 1985) ("[T]he fact that a design feature is attractive does not . . . preclude its being trademarked. If effective competition is possible without copying that feature, then, by analogy to the distinction between arbitrary and generic brand names, it is not a functional feature."). Here, Hark'n presented evidence showing it was a deliberate choice to use the color orange for the Stroops brand, and it was not to communicate the use, purpose, cost, or quality of the product (ECF 314 at 51–53). Moreover, there was no evidence demonstrating that Orange Whip could not avoid replicating Hark'n's product without incurring costs. Bright yellow or bright red, for example, would apparently serve the same "functions" that Orange Whip asserts that the color orange serves in this instance. All that considering, it was entirely reasonable, and not against the weight of the evidence, for the jury to conclude that effective competition was possible without copying the Orange Trade Dress.

Despite the evidence presented at trial, Orange Whip remains firm in its assertion that a single color cannot serve as the basis for a protectable trade dress. But even the United States Supreme Court has acknowledged "that color alone, at least sometimes, can meet the basic legal requirements for use as a trademark." *Qualitex*, 514 U.S. at 166. Indeed, the color of a product "can act as a symbol that distinguishes a firm's goods and identifies their source, without serving any other significant function." *Id.* As the court noted,

> over time, customers may come to treat a particular color on a product or its packaging (say, a color that in context seems unusual, such as pink on a firm's insulating material or red on the head of a large industrial bolt) as signifying a brand. And, if so, that color would have come to identify and distinguish the goods—i.e., "to indicate" their "source"—much in the way that descriptive words on a product (say, "Trim" on nail clippers or "Car–Freshner" on deodorizer) can come to indicate a product's origin.

18

*Id.* at 163. Thus, it is not legal error to find that the orange elastic bands at issue here could act as a symbol of Hark'n's goods and identify it as the source of that product. The court found that this was a question appropriately presented to the jury and the evidence at trial could support the jury concluding that the color orange signified Hark'n's product.

In sum, the court is not persuaded that the jury reached a seriously erroneous result in spite of the clear weight of the evidence. For that reason, the court is also not convinced that Orange Whip has demonstrated that extraordinary circumstances are present that would justify granting Orange Whip its sought-after relief under Rule 60(b)(6). Accordingly, the court rejects all of Orange Whip's arguments and declines to grant it relief based on its assertions that the jury's verdict was against the weight of the evidence.

### c. Challenges to the jury instructions and special verdict form

Orange Whip also seeks a new trial based on what it perceives as legal errors in the jury instructions and the verdict form. Federal Rule of Civil Procedure 51 details the procedure for objecting to jury instructions, including the appropriate timing of such objections. Pursuant to Rule 51, the court "must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered," and any objections made at that time are deemed timely. *See* Fed. R. Civ. P. 51(b)(2), (c)(2).

Here, during the final jury instruction conference, Orange Whip raised only one objection, and that was to Instruction No. 15 (ECF 304 at 6–10). Instruction No. 15 addressed "Secondary Meaning" under the Lanham Act (ECF 299 at 15). Within this instruction, Orange Whip sought to include language stating: "Evidence of intentional copying by defendant to confuse consumers" and to "pass off his product as the plaintiff's" (ECF 304 at 7–8). Hark'n objected to this proposal, stating it was not consistent with authority from the Tenth Circuit and including such

19

language is "superlative . . . at this point" (*id.* at 8). According to Hark'n, such language would only create an "additional burden for [Hark'n] that doesn't exist in the Tenth Circuit" (*id.*). In denying Orange Whip's request to include this language, the court chose to use language similar to what was used in *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, No. CIV-14-650-F (W.D. Okla. Feb. 28, 2020) (Dkt. No. 416). The court also relied on various other cases to reach its conclusion that Instruction No. 15, as written, was consistent with case law within this circuit. *See, e.g.*, *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1106–07 (10th Cir. 2020); *Kodiak Cakes LLC v. Cont'l Mills, Inc.*, 358 F. Supp. 3d 1219, 1227–28 (D. Utah 2019). And the court further agreed with Hark'n's position that the language proposed by Orange Whip was redundant and unnecessary (ECF 304 at 9). Nothing in the current motion has persuaded the court that it erred in denying Orange Whip's request to include this additional language.

The remainder of Orange Whip's challenges to the jury instructions and special verdict form are not timely under Federal Rule of Civil Procedure 51(c)(2). This presents a serious barrier to Orange Whip's arguments. "In post-trial motions and on appeal . . . claims of error are forfeited if there was not a proper objection made at trial." *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 749 F. Supp. 2d 1235, 1255 (D.N.M. 2010). Such objections must be made with "sufficient specificity" and "[a]bsent a proper objection [to a jury instruction], a party's argument is deemed waved." *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1179 (10th Cir. 2005); *see also Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999) (noting that "the purpose of the objection is to give the court an opportunity to correct any mistake before the jury enters deliberations" therefore "an excessively vague or general objection to the propriety of a given instruction is insufficient to preserve the issue for appeal").

Because Orange Whip did not preserve the objections to the jury instructions that it now raises in its motion, the only avenue for relief for Orange Whip related to these instructions requires a demonstration of "plain error." Rule 51 provides for such a scenario, stating that "[a] court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2). "To mount a successful plain error challenge, a party must demonstrate (1) an error, (2) that is plain or obvious under existing law, and (3) that affects substantial rights." *Royal Maccabees*, 393 F.3d at 1181 (citing *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1168 (10th Cir. 2003)). What's more, as noted by the Tenth Circuit, "[p]lain error review presents 'an extraordinary, nearly insurmountable burden.'" *Id.* (quoting *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 802 (10th Cir. 2001)).

Among its objections to the jury instructions, Orange Whip now asserts that the "jury was not properly instructed regarding the statutory presumption against trade dress," that the jury was not "adequately instructed regarding esthetic functionality," and the instructions "failed to address customer appeal" (ECF 364 at 14). Orange Whip does not point to any specific jury instruction that it believes was erroneous, nor does it argue for any specific language that should have been included in the instructions. This makes it difficult to assess whether the instructions were deficient. The court further notes that the jury was correctly instructed that Hark'n bears the burden of proof to establish each claim (ECF 299 at 12). The jury was also correctly instructed that "[Hark'n] must prove that [Orange Whip] used [Hark'n's] asserted trade dress in a manner that is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of [Orange Whip's] products" (*id.* at 16). And it was clearly stated in the instructions that Hark'n "must prove by a preponderance of the evidence that the asserted trade dress is not functional" (*id.* at 17). Together, these instructions properly instructed the jury on which party bears the burden of

proof. Thus, it is not entirely clear what Orange Whip means by claiming that the jury was not properly instructed regarding the presumption against trade dress. What's more, Orange Whip has not presented any case law or other support for its position that the jury instructions were deficient for not referencing aesthetic functionality or customer appeal. Orange Whip has failed to demonstrate an error in the instructions, much less that any such error is "plain or obvious under existing law." *Royal Maccabees*, 393 F.3d at 1181. Accordingly, the court does not find that Orange Whip has demonstrated plain error with regard to these objections to the jury instructions.

Another objection Orange Whip now raises concerns the jury instruction on functionality. According to Orange Whip, the instruction "appears to have improperly shifted the burden" and "the jury assessed whether Orange Whip sufficiently showed that the product was functional" (ECF 364 at 19). Again, Orange Whip points to no specific instruction that it asserts was erroneous but, in support of its argument, Orange Whip states that "[t]o prevail on a trade dress claim, a plaintiff must show that the alleged trade dress is nonfunctional" (*id.* (citing *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1271 (10th Cir. 1988)). As stated above, the court properly instructed the jury that Hark'n—not Orange Whip—bore the burden of establishing that the "asserted trade dress is not functional" (ECF 299 at 17). This is consistent with the case law cited by Orange Whip. Thus, it is unclear what basis Orange Whip has for its assertion that "the jury assessed whether Orange Whip sufficiently showed that the product was functional." From these arguments, it appears that Orange Whip believes there must have been an error with the instructions simply because it disagrees with the verdict. This argument is insufficient to meet the "extraordinary" and "nearly insurmountable burden" required to establish plain error. *See Royal Maccabees*, 393 F.3d at 1181.

Finally, Orange Whip asserts that the special verdict form was erroneous (ECF 364 at 17). According to Orange Whip, the form should have asked the jury to define "what dress was found" (*id.*). As the court noted above, a plaintiff asserting trade dress infringement must first "articulate the design elements that compose the trade dress." *Hammerton*, 2008 WL 2004327, at *3 (quoting *Yurman Design*, 262 F.3d at 116). In ruling on the dispositive motions, the court already found that Hark'n had satisfied this threshold requirement (ECF 251 at 9). And the court finds that Hark'n provided a sufficient articulation of the design elements of its trade dress at trial, along with numerous visual depictions of the asserted dress. The difficulty Orange Whip thus encounters is demonstrating that it was plain error not to have the jury write, in their own words, what features make up Hark'n's trade dress. Orange Whip has provided no case law or other legal authority that supports its position that this was required or that this amounts to plain error.

For the foregoing reasons, the court finds that Orange Whip has failed to demonstrate that the jury instructions or special verdict form were infected with legal error. The court thus denies Orange Whip's request for a new trial or to set aside the verdict on this basis.

2. <u>Motion to Stay Judgment</u>

Orange Whip also requests, pursuant to Rule 62(b) and (d), that the court stay enforcement of the judgment pending appeal (ECF 364 at 39). Rule 62(b) provides that "[a]t any time after judgment is entered, a party may obtain a stay . . . ." Fed. R. Civ. P. 62(b). And Rule 62(d) states that, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d).

Hark'n asserts the court should deny Orange Whip's request for a stay "for multiple reasons, including there is no judgment yet" (ECF 388 at 39). In its reply, Orange Whip did not respond to Hark'n's argument that a stay is inappropriate because no judgment has been entered (ECF 398). Given the arguments presented, the court finds that, because no judgment has been entered, there is nothing to stay. Accordingly, Orange Whip's request for a stay is denied.

### B.  Motion to Reconsider and Motion to Strike

On July 23, 2025, nearly three months after the jury rendered its verdict in this matter, Orange Whip requested that the court reconsider its ruling on one of Orange Whip's motions for summary judgment (ECF 366). Specifically, Orange Whip asks the court to reconsider its decision to deny Orange Whip's motion for summary judgment on Hark'n's trade dress infringement and unfair competition claims (*id.* at 1). In response to the Motion to Reconsider, Hark'n filed its Motion to Strike (ECF 369). Upon consideration of the relevant filings, the court, in its inherent authority, finds it appropriate to deny Orange Whip's Motion to Reconsider and deny Hark'n's Motion to Strike as moot.

The court first notes that the Motion to Reconsider fails to comply with the District of Utah's local rules. The rules provide that "[e]very document, excluding exhibits, must be signed by counsel or the unrepresented party." DUCivR 10-1(a)(8). No signature appears on the Motion to Reconsider. The failure to comply with DUCivR 10-1 is not the basis for the court's denial of the motion, but the omission of any signature is curious given the strong critiques therein of the court's summary judgment rulings.

In the Motion to Reconsider, Orange Whip does not provide any case law or legal authority demonstrating under what circumstances a court can or should reconsider a summary

judgment ruling after a jury trial.[14] The court finds that such arguments raised in the Motion to Reconsider are more appropriately addressed in a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. "In combination, Rule 50(a) and Rule 50(b) limit the scope of posttrial motions for judgment as a matter of law to those issues presented to the court before the jury deliberates." *Braun*, 141 F. Supp. 3d at 1183. Moreover, "compliance with the requirements of Rule 50 is mandatory," *Home Loan*, 827 F.3d at 1265, and the "failure to comply with Rule 50(b) forecloses [a party's] challenge to the sufficiency of the evidence." *Unitherm Food Sys.*, 546 U.S. at 404.

Orange Whip failed to move for a directed verdict under Rule 50(a), and the court finds it would be improper to allow Orange Whip to circumvent the purpose and mechanisms provided by Rule 50 by reconsidering, at this late stage, its summary judgment rulings. Frankly, under these circumstances, the court finds that "considerations of fairness and judicial economy clearly outweigh [Orange Whip's] interest in getting a second (or third) bite at the summary judgment apple." *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008).[15]

Nothing in Orange Whip's Motion to Reconsider convinces the court that it should ignore the jury's verdict and reconsider its summary judgment rulings. For that reason, the relief request in Hark'n's motion, that the court exercise its inherent authority to strike the Motion to Reconsider, is moot, and the motion is denied on that basis.

---

[14] The court also considered the substance of Orange Whip's motion, and nothing therein convinced the court that it erred in ruling on the dispositive motions.

[15] Orange Whip also complains that it did not have enough time to adequately address what it perceived as errors in the summary judgment rulings prior to the jury trial (ECF 366 at 8). The court would note that no such argument was raised between the court's issuance of its rulings on the dispositive motions and the jury trial, despite there having been an opportunity to file a motion for an extension, nor did Orange Whip raise this issue during any of the several pre-trial conferences. For instance, directly after the court issued its summary judgment rulings, a status conference was held with the parties (ECF 163). During that conference, counsel for Orange Whip affirmatively represented that they were prepared to go to trial on the scheduled date and time (*id.*).

## III.   CONCLUSION AND ORDER

For the foregoing reasons, the court orders as follows:

1.   Orange Whip's Motion for New Trial on the Trade Dress and Utah Unfair Competition Claims or in the Alternative Set Aside the Verdict or Stay the Judgment Pending Appeal (ECF 364) is DENIED;

2.   Orange Whip's Motion to Reconsider ECF 251 Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment (ECF 366) is DENIED; and

3.   Hark'n's Motion to Strike Orange Whip's Motion to Reconsider (ECF 369) is DENIED as MOOT.

IT IS SO ORDERED.

DATED this 26 September 2025.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah