IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| HARK'N TECHNOLOGIES, INC.,<br><br>     Plaintiff,<br><br>v.<br><br><br>ORANGE WHIP FITNESS X, LLC,<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER ON MOTIONS RE: [328, 329] DISGORGEMENT, [306] PREJUDGMENT INTEREST, AND [307] PERMANENT INJUNCTION**<br><br><br>Case No. 1:21-cv-00054-CMR<br><br>Magistrate Judge Cecilia M. Romero |

Following a weeklong trial, a jury reached a verdict in favor of Plaintiff Hark'n Technologies Inc. (Hark'n) on its claims for trade dress infringement, unfair competition, and unjust enrichment (ECF 300). After the jury was excused, and consistent with the court's Ruling Re: Disgorgement of Profits (ECF 280), the court invited the parties to submit additional briefing on the issue of disgorgement (ECF 292). Hark'n and Defendant Orange Whip Fitness X, LLC (Orange Whip) each took the opportunity to brief the issue of disgorgement, and the court has now considered those filings[1] (*see* ECF 328, 329, 351, 356, 375, 376). The court has also considered Hark'n's Motion for Prejudgment Interest (ECF 306) and its Motion for Permanent Injunction (ECF 307), along with Orange Whip's responses to those motions (ECF 330, 331), and Hark'n's replies (ECF 339, 340). On September 2, 2025, oral argument was held on the Motion for Permanent Injunction (ECF 392). At the hearing, the court asked Hark'n to submit a proposed permanent injunction and provided Orange Whip with the opportunity to file a response,

---

[1] While the parties did not initially file these briefs as motions, based on the contents of these filings, the court has found it appropriate to consider each initial brief as a motion.

addressing the scope of the proposed injunction. The court has now received and reviewed the proposed injunction and Orange Whip's response (ECF 396, 397). Having carefully considered the relevant filings, case law, and oral argument, the court now issues its ruling, awarding Hark'n $978,024.00 in disgorged profits from Orange Whip and thereby GRANTING IN PART Hark'n's disgorgement motion (ECF 328), DENYING Orange Whip's disgorgement motion (ECF 329), DENYING the Motion for Prejudgment Interest (ECF 306), and GRANTING the Motion for Permanent Injunction (ECF 307).

## I.    BACKGROUND[2]

Hark'n is a corporation that manufactures and distributes sleeved elastics used in the exercise and fitness industry, which includes "Slastix" (Slastix) resistance bands (ECF 120-6 at 16–29). At the core of this dispute are the orange Slastix bands that Hark'n produces, which Hark'n has asserted are distinguishable in the marketplace due to their "unique trade dress" (ECF 2). Orange Whip is a company that develops, markets, and sells various golf training products and services (ECF 122-1 at 18–27). Initially, representatives from Orange Whip approached the president of Hark'n about designing and manufacturing custom elastic bands for Orange Whip's golf products (ECF 120-6 at 16, 55–56). As part of these early negotiations, Orange Whip purchased several prototypes of the orange elastic bands from Hark'n, which were used in promotional videos and sold to Orange Whip's customers (ECF 145-4; ECF 122-3).

Earlier in this litigation, the court found that there was never a meeting of the minds as to the material terms of any contract between the parties (ECF 160). When an agreement failed to be reached with Hark'n, Orange Whip turned to another supplier, Ideal Joy, to produce the elastic

---

[2] Given the court's and the parties' familiarity with the facts and procedural history of this dispute, the court will reiterate only the facts and procedural history relevant to the instant motions. A more fulsome description is included in previous court orders (see, e.g., ECF 160 & ECF 251 (memorandum decisions ruling on the motions for summary judgment)).

bands (ECF 122-4; Pl. Ex. 16). Orange Whip sent Ideal Joy some of the prototypes created by Hark'n, and asked Ideal Joy to manufacture the same or similar elastic bands, which Orange Whip then began selling to its customers (ECF 122-4). During the manufacturing process, Ideal Joy sent follow-up questions to Orange Whip asking whether certain specifications should be the "same" as the samples (Pl. Ex. 16 at 17). In response to each question, Orange Whip indicated the product should be the same as Hark'n's prototypes, but "similar" would also be fine (*id.*). The COO of Orange Whip testified at trial that while "the videos and still shots" of Hark'n's products were on Orange Whip's website, "the bands that [Orange Whip] were selling were the bands that were supplied by Ideal Joy" (ECF 315 at 114).

On April 14, 2021, Hark'n initiated this suit against Orange Whip, asserting ten causes of action (ECF 2). After ruling on Orange Whip's motions for summary judgment, only three of Hark'n's claims remained: trade dress infringement under the Lanham Act, unfair competition under Utah common law, and unjust enrichment (ECF 160; ECF 251). The trade dress infringement and unfair competition claims pertained to Orange Whip's sale of the orange sheath elastic bands, and the unjust enrichment claim concerned the time and effort that Hark'n's president, Shon Harker, invested in creating a prototype specifically for Orange Whip. In the Complaint, Hark'n sought a permanent injunction and to recover Orange Whip's profits derived from Orange Whip's acts of trade dress infringement and unfair competition (ECF 2 at 47–48).

At the final pretrial conference, Orange Whip argued that the disgorgement of profits was "inappropriate for the jury to decide because [it] is an equitable remedy to be determined by the court" (ECF 280). In assessing relevant law and the facts of this case, the court determined that the remedy of disgorgement that may be available to Hark'n, if it were successful with its claims for trade dress infringement and unfair competition, is equitable (*id.*). Thus, the court agreed with

Orange Whip and decided to fashion a verdict form that would ask the jury to consider whether Orange Whip's conduct was "willful" and, if appropriate, what amount of profits Orange Whip received as a result of any trade dress infringement or unfair competition (*id.*).[3] Depending on the jury's verdict, the court would then decide if the disgorgement of profits was consistent with the principles of equity.

Prior to trial, the court granted Orange Whip's motion to exclude evidence related to "actual damages" (ECF 278). The court noted that it was not disputed that Hark'n had not disclosed any evidence related to "loss of goodwill" or "reputational harm," and that no evidence had been produced that demonstrated diverted sales related to the alleged infringing product (*id.*). The only evidence of what Hark'n deemed to be "actual damages" that it sought to introduce at trial related to its contract claim (*id.*). However, the court had dismissed Hark'n's contract claim after finding that there was no enforceable agreement between the parties (*id.*). Thus, the amount Hark'n would have received under the terms of any contract was deemed irrelevant to the remaining claims and therefore inadmissible (*id.*). Accordingly, the court precluded Hark'n "from presenting evidence related to damages [Hark'n] may have suffered in the form of loss of goodwill, reputational harm, or that [Hark'n] should be able to recover the amount it would have received if an enforceable agreement had been reached between the parties" (*id.*).

At trial, Hark'n and Orange Whip each called their own expert witnesses to testify about the profits Orange Whip made during the relevant time period, along with their opinion as to any associated costs (*see* ECF 319 at 99–192). The exhibits presented included sales spreadsheets "by

---

[3] In reaching this decision, the court looked to a similar matter decided by Judge Nuffer, wherein the jury was asked to determine whether the defendant was liable for trade secret misappropriation and false advertising, whether the defendant's conduct was willful, and, if so, the amount of profits the defendant received as a result of its wrongful conduct. *See Bimbo Bakeries USA, Inc. v. Sycamore*, No. 2:13-cv-00749-DN-DBP, 2018 WL 1578115, at *2 (D. Utah Mar. 29, 2018). After the jury in *Bimbo Bakeries* rendered its verdict, finding the defendant liable for trade secret misappropriation and false advertising, Judge Nuffer invited the parties to submit briefing on the issue of appropriate damages to award under the Lanham Act. *See id.* at *1.

SKU [stock keeping unit]" and a "SKU Information Table" (ECF 295), showing Orange Whip's revenues (*see* Pl. Exs. 13, 14, 14.1, 27). As part of its presentation, Hark'n offered Exhibit 45, which counsel referred to as "a summary of the numbers" (ECF 319 at 14) (Pl. Ex. 45). Exhibit 45 purported to show the "Total Sales" related to what Hark'n considered to be the infringing products, minus the sales of the initial prototypes that Orange Whip had purchased from Hark'n (Pl. Ex. 45). Based on Exhibit 45, the profits Orange Whip received from selling the alleged infringing product amounted to $978,024.00 (*id.*). Exhibit 45 was admitted into evidence with no objection from Orange Whip's counsel (ECF 319 at 14).

Furthermore, the jury heard testimony related to actual consumer confusion between Hark'n's product and Orange Whip's product. While cross-examining Mr. Harker, counsel for Orange Whip asked whether he had "provided something for [his] attorney to share with this jury about actual confusion" (ECF 314 at 157–158). Mr. Harker responded in the affirmative, stating he had received phone calls from "four, five or six people" who associated the color "orange" with Hark'n's products (*id.*). Counsel attempted to strike Mr. Harker's answer, but the court denied this request (*id.*).

At the trial's conclusion, the jury found that Orange Whip willfully infringed on Hark'n's protectable trade dress and that Orange Whip willfully engaged in unfair competition (ECF 300). The jury further advised that the amount of profits that Orange Whip received as a result of its willful trade dress infringement and/or unfair competition is $978,024.00 (*id.*). As for unjust enrichment, the jury found Hark'n had proven the elements of its claim and was entitled to receive, as a result of Orange Whip's unjust enrichment, $37,500.00 in damages (*id.*).

## II.   DISCUSSION

The jury found Orange Whip liable for trade dress infringement and unfair competition. Related to those claims, Hark'n seeks recovery of Orange Whip's ill-gotten profits through disgorgement, prejudgment interest, and injunctive relief. In conducting the relevant analyses below, the court is mindful that, "[p]ursuant to the Seventh Amendment to the Federal Constitution, in fashioning equitable relief, a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict." *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912–13 (10th Cir. 2004) (citing *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 965–66 (10th Cir. 2002)).

### A. Disgorgement

Several remedies are available for trade dress infringement under the Lanham Act, allowing a district court to "award a winning plaintiff injunctive relief, damages, or the defendant's ill-gotten profits." *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 213 (2020); *see also* 15 U.S.C. § 1117.[4] Here, Hark'n seeks to recover Orange Whip's profits related to its Lanham Act violations; however, the Tenth Circuit has cautioned that "[a]n accounting of profits is not automatically granted upon a showing of infringement." *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005). As "the statute makes clear, any award of profits is 'subject to the principles of equity.'" *Id.* (quoting 15 U.S.C. § 1117(a)).

The United States Supreme Court has further clarified that willfulness is not a precondition to award the disgorgement of profits for a Lanham Act violation, but a "defendant's mental state is a highly important consideration in determining whether an award of profits is

---

[4] Because Hark'n cannot receive an award of the disgorgement of Orange Whip's profits for both its trade dress infringement claim under the Lanham Act and its unfair competition claim under Utah common law, it is only necessary to address whether disgorgement is appropriate related to one of these claims. In their briefing, the parties focused on disgorgement under the Lanham Act; thus, the court has done the same in its ruling.

appropriate." *Romag Fasteners*, 590 U.S. at 219. Notably, in this matter, the jury found that Orange Whip's conduct was willful, which weighs in favor of awarding Hark'n the disgorgement of Orange Whip's profits. However, "[i]n addition to willfulness," this court has stated that "other equitable considerations may include, among other things, '(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) plaintiff's laches; and (5) plaintiff's unclean hands.'" *Vitamins Online, Inc. v. HeartWise, Inc.*, No. 2:13-cv-00982-DAK, 2020 WL 6581050, at *21 (D. Utah Nov. 10, 2020) (quoting *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2013 WL 1900562, at *17 (D. Colo. May 7, 2013), *aff'd*, 627 F. App'x 682 (10th Cir. 2015)). The court considers each of these factors in turn.

In assessing the first factor—the degree of certainty that the defendant benefited from the unlawful conduct—the court turns to the jury's finding that Hark'n successfully demonstrated it has a protectable trade dress and that the "amount of profits" that Orange Whip received "as a result" of its willful infringement was $978,024.00 (ECF 300). Based on the testimony of the expert witnesses, along with the various exhibits presented at trial that illustrated Orange Whip's profits over the years, the court agrees with the jury that Orange Whip's infringing activity resulted in a financial benefit. Accordingly, the court finds there is a high degree of certainty that Orange Whip benefited from its unlawful conduct, and the first factor weighs in favor of disgorgement.

The second factor relates to the availability and adequacy of other remedies. Because no evidence was presented at trial related to lost profits or other actual harm suffered by Hark'n, the remedies available are limited to those that are equitable in nature. As discussed further below, the other equitable remedy available to, and sought by, Hark'n is that of an injunction. The court

however finds that an injunction, by itself, would not be an adequate remedy for Orange Whip's willful infringement. Thus, the second factor weighs in favor of disgorgement.

Under the third factor, the court considers the role of a particular defendant in effectuating the infringement. Here, the only remaining defendant is Orange Whip.[5] The evidence at trial demonstrated that, following a breakdown in negotiations, Orange Whip took the prototypes created by Hark'n to another supplier and requested a near-exact of the product at issue. Furthermore, as part of Orange Whip's presentation of evidence, it submitted a "Cease And Desist" letter that it received from Hark'n's counsel on May 29, 2019 (Def. Ex. 1022). In the letter, it states that Hark'n is providing Orange Whip with "formal notice" that Orange Whip is "not to make, use, sell, or offer to sell the proprietary Orange Whip product that Hark'n Tech exclusively designed" in relation to the parties' contract negotiations (*id.* at 1). Hark'n further informed Orange Whip that the "product design, product features . . . and the overall product specification and commercial impression and presentation was created by Hark'n" and is "solely and exclusively owned" by Hark'n (*id.*). Despite the contents of this Cease and Desist letter, Orange Whip continued to sell products that bore what the jury determined to be Hark'n's protectable trade dress. This evidence, and related testimony presented at trial, demonstrates that Orange Whip played a key role in effectuating the infringement. Accordingly, the court finds the third factor also weighs in favor of disgorgement.

The fourth and fifth factors—assessing plaintiff's laches and plaintiff's unclean hands—also weigh in favor of disgorgement. The court does not find that Hark'n delayed in bringing suit

---

[5] Hark'n's Complaint included claims against various defendants, including Douglas J. Wald (Wald) and Brian J. Newman's (Newman), who are the CEO and COO of Orange Whip (ECF 2). Throughout the litigation, all defendants except for Orange Whip have been dismissed. In ruling on the motions for summary judgment, the court dismissed the remaining claims that were asserted against Wald and Newman individually (ECF 160; ECF 251).

against Orange Whip, and no evidence was presented to demonstrate that Hark'n bears unclean hands with respect to Orange Whip's infringement.

All five of the relevant factors discussed in *Vitamins Online*, 2020 WL 6581050, at *21, weigh in favor of disgorgement. That, in addition to the jury's finding of willfulness, leads the court to conclude that disgorgement of profits is an appropriate remedy and is consistent with the principles of equity.

Despite the jury's finding of willfulness and the facts discussed above, Orange Whip argues the court should decline to award the disgorgement of profits (ECF 329). Orange Whip's argument primarily focuses on the fact that no evidence was presented that Hark'n suffered any actual damages as a result of its infringement (*id.*). This argument fails however because governing authority has made clear that a lack of evidence of actual damages does not preclude the disgorgement of profits. Indeed, the Tenth Circuit recently reiterated that it would be an abuse of discretion for the court "to require a showing of actual damages for disgorgement of profits under the Lanham Act." *Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1244 (10th Cir. 2023) (citing *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1223 (10th Cir. 1998) (explaining in further detail that actual damages remain important, but not dispositive, in determining whether an award of profits is appropriate)). The court is thus unpersuaded that disgorgement is inappropriate on that basis.

Orange Whip further argues disgorgement is inappropriate because the jury's finding that Orange Whip acted "willfully" is "inconsistent with the evidence presented at trial" (ECF 329 at 12). As noted above, the court is "bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict." *See Bartee*, 374 F.3d at 912–13. To the extent Orange Whip asks the court to render a decision on the issue of disgorgement that conflicts

9

with the jury's findings, this is contrary to binding precedent, and the court declines to do so.[6] *See id.*; *see also Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d 726, 731 (10th Cir. 2000) (stating that unless a verdict has been set aside, the court "must treat the verdict as binding").[7] Still, even if the jury had incorrectly found that Orange Whip's actions were willful, the court notes this would not prohibit the disgorgement of profits, as the Supreme Court made clear that willfulness is not a mandatory prerequisite to such an award, it is merely one of the considerations. *See Romag Fasteners*, 590 U.S. at 219.

Now that the court has determined that the principles of equity support the disgorgement of profits, the court must determine the amount. As stated by the Tenth Circuit, "[t]o account for the profits subject to disgorgement, § 1117(a) institutes a burden-shifting scheme under which the plaintiff bears the initial burden to 'prove the defendant's sales only,' before 'the burden shifts to the defendant,' who must then 'prove which portion of the sales are not attributable to the [infringing goods].'" *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 99 F.4th 1150, 1172 (10th Cir. 2024) (quoting *Vitamins Online*, 71 F.4th at 1244).

In this matter, the court instructed the jury on calculating profits subject to disgorgement consistent with the burden-shifting scheme instituted by § 1117(a) (ECF 299 at 21–22). Based on these instructions, the jury concluded that the total profits that resulted from Orange Whip's

---

[6] The court notes that Orange Whip has since filed a Motion to Set Aside the Verdict (ECF 364). The court however has denied that motion (*see* ECF 404) thus the jury verdict stands.

[7] Based on the briefing, it also appears that Orange Whip takes issue with the jury instructions. Orange Whip suggests that Final Jury Instruction No. 20, defining "willfulness," was "unhelpful and confusing to the jury" (ECF 329 at 15). According to Orange Whip, the instruction was confusing because it did not include a definition for "goodwill" or "reputation" (*id.*). Notably, Orange Whip's proposed jury instructions also did not include a definition for "goodwill" or "reputation" (ECF 258, 262), and no request was made by either party to include these definitions. The court further notes that Orange Whip raised no objections to any of the jury instructions with regard to these definitions during the final jury instructions conference (ECF 291). Moreover, the court's instruction on the definition of willfulness is consistent with guidance from the Tenth Circuit on this issue, *see Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1162 (10th Cir. 2013); *see also W. Diversified*, 427 F.3d at 1273, and Orange Whip has presented no case law to suggest otherwise.

infringing activity is $978,024.00 (ECF 300). In considering the evidence presented at trial (*see e.g.*, Pl. Exs. 13, 14, 14.1, & 27), the court agrees with the jury that Hark'n established, with reasonable certainty, the total sales that resulted from Orange Whip's infringing activity. The court also agrees with the jury's apparent assessment of the expenses that are related to the sales of the products at issue. Specifically, the court finds it appropriate to apply the calculations found in Plaintiff's Exhibit 45, which indicates that the total sales from the infringing product amount to $995,662.00 and the cost of the initial kits amount to $17,638.00 (Pl. Ex. 45). Consequently, the court finds that the amount that should be disgorged for Orange Whip's willful infringement is $978,024.00.

In its post-trial briefing, Hark'n argues that an enhancement of Orange Whip's ill-gotten gains is appropriate and seeks three times the amount of profits found by the jury (ECF 328 at 17–18). First, Hark'n incorrectly argues that in *Bimbo Bakeries USA, Inc. v. Sycamore*, Case No. 2:13-cv-00749-DN-DBP, 2018 WL 1578115 (D. Utah Mar. 29, 2018), Judge Nuffer found that the "enhancement factors to consider" are listed in the Restatement (Third) of Unfair Competition (hereinafter, Restatement) § 37(2) (Am. L. Inst. 1995) (*id.*). Judge Nuffer did not address "enhancement factors to consider" when discussing disgorgement. *See Bimbo Bakeries*, 2018 WL 1578115, at *2–3. Hark'n's argument on this point misstates Judge Nuffer's ruling and is inapplicable to the matter at hand. In his ruling, Judge Nuffer merely acknowledged in a footnote that "equitable factors for awarding disgorgement of profits" can be found in § 37(2) of the Restatement. *See Bimbo Bakeries*, 2018 WL 1578115, at *3 n.17. Nowhere in that ruling did Judge Nuffer find that the court should look to the Restatement to determine whether the *enhancement* of damages under the Lanham Act is appropriate. The text of § 37(2) makes it even more clear that the purpose of that section is to assist in determining whether "the award of profits is appropriate,"

with no mention or other support for the proposition that these factors should be used for enhancement purposes. The court therefore declines to award an enhancement of damages by applying the factors identified in § 37(2) of the Restatement.

Second, Hark'n points to 15 U.S.C. § 1117(b) to argue that it is entitled to "three times" the amount of Orange Whip's profits (ECF 328 at 18). Up to this point, the discussion of damages in this matter, to the court's knowledge, has been focused on the relief discussed in § 1117(a), not § 1117(b). In § 1117(b), the court "shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages" for the intentional and knowing use of a counterfeit mark. The issues presented to the jury, and currently before this court, did not include allegations of a counterfeit mark. Accordingly, applying the mechanism provided in § 1117(b) to award treble damages is inapplicable.[8] In its reply, Hark'n acknowledged that § 1117(b) "does not directly apply here" but uses the language there to indicate "the upper limit of an enhancement of a defendant's profits under the Lanham Act" (ECF 375 at 20). While that may be, the court is not persuaded by Hark'n's argument on this point, nor does the court find that the language in § 1117(b) supports an enhancement in this matter.[9]

In sum, the relevant factors all weigh in favor of disgorgement, as does the jury's finding that Orange Whip's infringement was willful. Furthermore, there was evidence in the record to

---

[8] The court acknowledges that under § 1117(a) it can fashion an award "not exceeding three times" the amount of actual damages. *See* 15 U.S.C. § 1117(a). However, as discussed above, there were no actual damages to award in this matter; thus, the court declines to enhance the disgorgement of profits it has deemed to be appropriate pursuant to this part of § 1117(a). *See also Bimbo Bakeries*, 2018 WL 1578115, at *2 (recognizing the right to award up to three times any actual damages award but declining to do so, concluding that because "the jury did not find an amount of actual damages, there is no basis to determine what three times actual damages . . . might be").

[9] The court is also not convinced that enhancement is appropriate based on the facts Hark'n relies on in its motion. Hark'n asserts that by selling products bearing Hark'n's trade dress, Orange Whip's sales of other products became "supercharged," resulting in an additional $1,621,976 in revenues (ECF 328 at 18). The court is not persuaded that this was sufficiently established at trial, nor that it would justify an enhancement of damages. Hark'n also points to the fact that it is "the only U.S. manufacturer of such products" and that Orange Whip's conduct was willful (*id.* at 19). Those facts were relevant in establishing whether Orange Whip was liable for trade dress infringement and whether disgorgement would be equitable under the circumstances. The court does not find it appropriate to also use those facts to enhance damages.

support the jury's finding that the amount of profits Orange Whip received as a result of its willful trade dress infringement is $978,024.00. The court finds this amount to be a fair and accurate assessment of the amount that should be disgorged in this matter. However, the court does not find that these circumstances warrant any further enhancements of this amount, and it would be contrary to the principles of equity to award Hark'n three times this amount as it has requested. Thus, the court awards Hark'n $978,024.00 in disgorged profits from Orange Whip.

### B.  Prejudgment Interest

Hark'n has further requested that the court award prejudgment interest on Orange Whip's disgorged profits (ECF 306). "[I]n the federal context, [the Tenth Circuit] has adopted a preference, if not a presumption, for prejudgment interest." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000). Still, even though prejudgment interest "is ordinarily awarded in federal cases," it is "not available as a matter of right." *Pabst v. Oklahoma Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000). When determining whether Hark'n is entitled to prejudgment interest related to its claim for unfair competition, the court must look to Utah law. *See Vitamins Online*, 2020 WL 6581050, at *23.

Upon considering the relevant statutes, case law, and facts of this case, the court finds that (1) the principles of statutory interpretation do not support awarding prejudgment interest under the Lanham Act, (2) the relevant factors applicable to federal claims do not support awarding prejudgment interest, and (3) prejudgment interest is not appropriate under Utah law for Hark'n's unfair competition claim.

### 1.  Principles of statutory interpretation do not support awarding prejudgment interest under § 1117(a) for Hark'n's award of Orange Whip's disgorged profits.

In applying principles of statutory interpretation, Hark'n is not entitled to prejudgment interest, particularly given that its disgorgement remedy is not based on actual damages. As

discussed above, Hark'n prevailed on its trade dress infringement claim under the Lanham Act. 15 U.S.C. § 1117 details the relief available for violations of the Lanham Act, along with the criteria associated with each award. In this matter, § 1117(a) applies to the relief sought and authorizes a plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." In that same statute, § 1117(b) allows a plaintiff to treble damages where there is an intentional and knowing use of a counterfeit mark. Significantly, § 1117(b) specifically authorizes the court to award prejudgment interest, while § 1117(a) contains no such provision.

It is a general rule of statutory interpretation that "[w]hen Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning (*expressio unius est exclusio alterius*)." *Bittner v. United States*, 598 U.S. 85, 94 (2023); *see also United States v. Pauler*, 857 F.3d 1073, 1076 (10th Cir. 2017) ("[A] standard principle of statutory interpretation provides that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))). In interpreting the different subsections of 15 U.S.C. § 1117, various circuit courts have applied this principle and reached the conclusion that prejudgment interest is not permissible when a party is proceeding under § 1117(a). This is because of the neighboring subsection of the statute, § 1117(b), which includes specific language regarding prejudgment interest; thus, such language appears to have been intentionally omitted from § 1117(a). *See Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209, 225 (3d Cir. 2021) ("[B]ecause § 1117(b) allows courts to award prejudgment interest and § 1117(a) does not provide for prejudgment interest, prejudgment interest is unavailable under § 1117(a)."); *Georgia-Pac. Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 722 (4th Cir.

14

2015) (noting that "§ 1117(a) makes no specific provision for prejudgment interest in cases involving a recovery of a defendant's profits, nor does prejudgment interest itself constitute a profit, as that term is generally used" and finding "when . . . a statute provides particularized forms of monetary relief and explicitly authorizes prejudgment interest in some circumstances but not others, we conclude that prejudgment interest is not intended to be awarded except as provided in the statute").[10]

The court acknowledges that some circuits have found that prejudgment interest may be appropriate under § 1117(a) if the case is "exceptional," but in each of those cases the courts did not directly engage with the tension between the language used in § 1117(a) and § 1117(b) and the inclusion of "prejudgment interest" in one subsection and not the other. *See 4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 & n.12 (2d Cir. 2019) (declining to decide whether prejudgment interest was appropriate in the case before it and remanding the matter so that the district court could consider whether the case was "exceptional" along with "other factors generally relevant to awards of prejudgment interest"); *see also Wynn Oil Co. v. Am. Way Serv. Corp.*, 61 F.3d 904 (6th Cir. 1995) (finding prejudgment interest under § 1117(a) is reserved for "exceptional cases"). Nevertheless, in applying the reasoning from those cases, the court does not find this case to be "exceptional" enough to warrant the application of prejudgment interest.

The court is further aware that in *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219 (10th Cir. 2000), the Tenth Circuit considered a matter where damages had been

---

[10] While the Ninth Circuit does not appear to have addressed this issue directly, in considering damages awarded under § 1117(c), it found that prejudgment interest was not permissible. *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023). The court noted that § 1117(b) "specified the availability of prejudgment interest," but § 1117(c) "makes no mention of prejudgment interest." *Id.* The court thus reasoned that prejudgment was not available under subsection (c), stating that "[t]his variation is meaningful, and we presume that Congress's lack of express inclusion amounts to intentional exclusion." *Id.* The Ninth Circuit did not consider prejudgment interest under § 1117(a) because that subsection was "inapplicable" to the matter before it, *see id.* at 1008 n.3, but this court is persuaded that the same reasoning would apply to find that prejudgment interest is not available under subsection (a).

awarded under § 1117(a) of the Lanham Act and ultimately remanded the matter for the district court to consider whether prejudgment interest was appropriate. *Id.* at 1236–37. In *United Phosphorus*, the district court had originally based its decision to deny prejudgment interest on the "somewhat speculative nature of the damages calculations and the fact the damages could not 'even approach[ ] being a liquidated amount.'" *Id.* at 1237. The Tenth Circuit was concerned that the district court applied Kansas law to federal claims, noting that "this Court has adopted a preference, if not a presumption, for prejudgment interest" for federal claims. *Id.* Thus, the Tenth Circuit remanded the matter for the district court to consider the appropriate standard under federal law. *Id.* When it came to its analysis of prejudgment interest, the *United Phosphorus* court's review was narrow and did not consider the text of § 1117, much less the fact that subsection (b) references an award of prejudgment interest while subsection (a) is silent on that account.[11]

There appears to be no case law wherein a court considered the disparate language regarding prejudgment interest under § 1117(a) and § 1117(b) and ultimately concluded that prejudgment interest was nevertheless presumptively available under § 1117(a). At best, the Fourth Circuit stated it did "not categorically foreclose an award of prejudgment interest under § 1117(a) as an element of a damages award in a trademark infringement case." *Georgia-Pacific*, 781 F.3d at 722. The Fourth Circuit noted that "one's loss of the use of a particular sum of money over a period of time causes damage, for which the law generally allows an award of prejudgment interest." *Id.* However, because the plaintiff in *Georgia Pacific* "did not undertake to prove its own

---

[11] In a matter similar to *United Phosphorus*, the Seventh Circuit declared, in consideration of a damages award under § 1117(a), that "prejudgment interest should be presumptively available to victims of federal law violations." *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). However, similar to the issues presented to the court in *United Phosphorus*, the *Gorenstein* court was not asked to consider § 1117 in its entirety. This is clear from the *Gorenstein* court's statement that "the statute makes no reference to prejudgment interest," *id.*, as it fails to recognize that the next section, § 1117(b), specifically allows for an award of prejudgment interest. Thus, the court is not persuaded by the Seventh Circuit's finding that § 1117(a) carries a presumption of availability of prejudgment interest.

damages, claiming instead only a disgorgement of [the defendant's] gross profits," the Fourth Circuit found that prejudgment interest was unavailable under § 1117(a). *Id.* The same situation is present in this matter, where there was no evidence of Hark'n's actual damages and, instead, the disgorgement remedy sought was based on a theory of unjust enrichment.[12] Thus, disgorgement of Orange Whip's profits is purely equitable, and if the court were to apply the reasoning of the Fourth Circuit to this matter, Hark'n would still not be entitled to prejudgment interest.

Accordingly, based on the principles of statutory interpretation, the court finds that prejudgment interest is not presumptively available to Hark'n under § 1117(a), particularly given the fact that there was no evidence of actual damages to Hark'n as a result of Orange Whip's infringement.

2.  The relevant factors applied to federal claims do not support awarding prejudgment interest on Hark'n's Lanham Act claim.

"Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987); *see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 n.7 (1995). Under federal law, "prejudgment interest is not recoverable as a matter of right." *Commodity Futures Trading Comm'n v. Brockbank*, 505 F. Supp. 2d 1169, 1176 (D. Utah 2007) (quoting *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1288–89 (10th Cir. 1998)). Thus, in considering federal claims, courts employ a "two-step analysis" to determine whether to award prejudgment interest: (1) "whether the award of prejudgment interest will serve to

---

[12] In an earlier ruling on Hark'n's request to seek punitive damages, the court recognized "that different circuits have treated disgorgement differently, and there may be situations where disgorgement is based on an unjust enrichment theory and others based on situations where the plaintiff sustained damages" (ECF 286 at 4 (citing *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992))). The court then found that any award of disgorgement in this matter would be based on a theory of unjust enrichment, which is in and of itself an equitable remedy (*id.* at 5).

compensate the injured party"; and (2) "whether the equities would preclude the award of prejudgment interest." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1286 (10th Cir. 2002) (quoting *Eastman Kodak Co. v. Westway Motor Freight, Inc.*, 949 F.2d 317, 321 (10th Cir. 1991)). Here, the court does not find that either prong of the two-step analysis supports the award of prejudgment interest.

The first question is whether the award of prejudgment interest will serve to compensate the injured party. This question targets the purpose of prejudgment interest, which the United States Supreme Court has indicated is to compensate "for the loss of use of money" that has accrued. *West Virginia*, 479 U.S. at 310 n.2. Regarding this point, Orange Whip argues that "[u]nlike lost-profits or delay damages, Hark'n never fronted" any money related to Orange Whip's products, thus Hark'n "suffered no loss of investment value that prejudgment interest could 'make whole'" (ECF 330 at 3–4). The court agrees with Orange Whip on this point. As the court has already discussed, no evidence has been presented of actual damages suffered by Hark'n, such as lost profits through diverted sales, as a result of Orange Whip's infringement. Accordingly, there is no "loss of use of money" that has accrued over time. Thus, in considering the facts of this case, the court does not find that the award of prejudgment interest will serve to compensate Hark'n for any injury.

The second part of the analysis asks whether the equities would preclude the award of prejudgment interest. The court has already weighed the equities in this matter in reaching its determination that disgorgement is an appropriate remedy. In considering the same facts and equitable considerations that supported the court's decision to order Orange Whip to disgorge its profits, the court finds that compounding that award with an additional burden of prejudgment interest would not be equitable. Any prejudgment interest would thus serve only as an additional

penalty against Orange Whip, which does not appear warranted or necessary under the circumstances. Accordingly, the court finds that the second part of the analysis also does not support granting Hark'n's request for prejudgment interest.

As noted above, prejudgment interest is not recoverable as a matter of right under federal law. After employing the relevant two-step analysis, the court determines that prejudgment interest is not appropriate for Hark'n's federal law claim asserted under the Lanham Act.

3. Utah law does not support awarding prejudgment interest on Hark'n's unfair competition claim.

Hark'n's unfair competition claim, which is the second basis for the disgorgement award, is brought pursuant to Utah common law. Thus, in determining whether Hark'n is entitled to prejudgment interest related to this claim, the court must look to Utah law. *See Vitamins Online*, 2020 WL 6581050, at *23.

As stated by the Utah Supreme Court, "[p]rejudgment interest may be recovered where the damage is complete, . . . 'the loss ha[s] been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.'" *USA Power, LLC v. PacifiCorp*, 372 P.3d 629, 666 (Utah 2016) (quoting *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 272 (Utah 2009)). Notably, the Utah Supreme Court has also stated that "[a]n award of prejudgment interest simply serves to compensate a party for the depreciating value of the amount owed over time and, as a corollary, deters parties from intentionally withholding an amount that is liquidated and owing." *Iron Head Const. Inc. v. Gurney*, 207 P.3d 1231, 1233 (Utah 2009) (quoting *Trail Mountain Coal Co. v. Utah Div. of State Lands & Forestry*, 921 P.2d 1365, 1370 (Utah 1996)). In other words, "[p]laintiffs are entitled to damages for the loss of use of the money that, but for the [defendant]'s breach and ensuing delay,

would have been paid to plaintiffs in satisfaction of their . . . claim." *Id.* (quoting *Kraatz v. Heritage Imps.*, 71 P.3d 188, 205 (Utah Ct. App. 2003)).

Regarding Hark'n's unfair competition claim, the court finds that Hark'n has not demonstrated that prejudgment interest is appropriate under Utah law. In this case, the evidence showed that Orange Whip received profits over several years related to the sale of the orange elastic bands. Based on those facts, the court does not find that Hark'n has demonstrated it suffered a "loss" of money that was fixed as of a definite time. In other words, there is no specific date for the court to look to when considering Hark'n's request for prejudgment interest. What's more, there was no evidence of diverted sales, which further demonstrates that this is not an instance where funds were withheld that were "liquidated and owing" to Hark'n.

Furthermore, the questions presented to the jury regarding profits that Orange Whip received as a result of its unfair competition, and subsequent questions now before the court concerning prejudgment interest under Utah law, are similar to those presented in *John Bean Techs. Corp. v. B GSE Grp., LLC*, No. 1:17-cv-00142-RJS, 2023 WL 6164322 (D. Utah Sept. 21, 2023). In considering whether prejudgment interest was appropriate for claims brought under Utah law, Judge Shelby noted that "Utah courts are reluctant to award prejudgment interest on lost profits . . . [or] unjust enrichment." *Id.* at *10 (quoting *ClearOne Commc'ns, Inc. v. Chiang*, 432 F. App'x 770, 774–75 (10th Cir. 2011)). This is primarily owing to "the very nature of lost future profits," which "'injects an air of uncertainty and speculation into the calculation of damages,' requiring the jury to 'speculate . . . what profits would have been generated had the defendant not acted wrongfully." *Id.* (quoting *ClearOne Commc'ns,* 432 F. App'x at 774). In *John Bean*, Judge Shelby noted it was not a "clear-cut case" and the "question of damages arising from Defendants' misconduct was heavily litigated, with extensive exhibits and expert testimony presented by both

sides." *Id.* Similar to Judge Shelby's findings in *John Bean*, this court "found the evidence presented at trial was sufficient to sustain" an award of disgorgement; however, also consistent with the ruling in *John Bean*, the court now finds that the evidence was "far too speculative to warrant prejudgment interest under Utah's more exacting standards." *Id.*; *see also ClearOne Commc'ns*, 432 F. App'x at 775 (denying a request for prejudgment interest under Utah law for state law claims because the "use of proxies or estimates, even if actual sales were involved in their computation, does not constitute the mathematical certainty necessary for an award of prejudgment interest").

For those reasons, the court finds that Hark'n is not entitled to prejudgment interest under Utah law for its unfair competition claim.

## C. Permanent Injunction

Under the Lanham Act, for violations such as trade dress infringement, the court has the power to grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). As this court has previously recognized, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *BMW of N. Am., LLC v. Issa*, No. 2:19-cv-220, 2020 WL 1325278, at *8 (D. Utah Mar. 20, 2020) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).

"Because § 1116(a) [of the Lanham Act] permits, but does not require, injunctive relief, courts must look to traditional equitable principals to determine whether to grant a permanent injunction." *Allergy Rsch. Grp., LLC v. Thrill Deals LLC*, No. 2:21-cv-00380-JNP-JCB, 2022 WL 4182257, at *2 (D. Utah Sept. 13, 2022) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–92 (2006)). These "well-established principles of equity" require a plaintiff to satisfy a four-

part test, demonstrating: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay*, 547 U.S. at 391. As discussed below, the court finds that each aspect of the four-part test weighs in favor of granting Hark'n's request for a permanent injunction.[13]

    1.  <u>Irreparable injury</u>

The Lanham Act provides that a plaintiff seeking a permanent injunction "shall be entitled to a rebuttable presumption of irreparable harm" upon a finding that certain violations have occurred, including a violation of 15 U.S.C. § 1125(a). *See* 15 U.S.C. § 1116(a). Here, Hark'n's trade dress claim was brought under § 1125(a) (*see* ECF 2 at 34), and the jury found Orange Whip liable for willful trade dress infringement (ECF 300). As such, Hark'n is entitled to a rebuttable presumption of irreparable harm.

In opposing the request for a permanent injunction, Orange Whip asserts that "[d]elay in seeking a preliminary injunction can negate irreparable injury" (ECF 331 at 15). Indeed, this court has noted that "[w]hile some courts have 'presumed' that irreparable harm exists in a trademark case, any such presumption is negated when the trademark owner delays in seeking relief." *Nature's Life, Inc. v. Renew Life Formulas, Inc.*, No. 2:05-cv-162, 2006 WL 62829, at *7 (D. Utah Jan. 11, 2006) (citing *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("Delay in seeking relief . . . undercuts any presumption that infringement alone has caused irreparable

---

[13] In arguing a permanent injunction would not be appropriate in this case, Orange Whip argues that Hark'n's trade dress "is generic and functional" (ECF 331 at 2). As stated above, "in fashioning equitable relief, a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict." *Bartee*, 374 F.3d at 912–13 (citing *Smith*, 298 F.3d at 965–66). Because these arguments would require the court to disregard the jury's findings that Hark'n has a "protectable trade dress" and that Orange Whip was liable for willful trade dress infringement (ECF 300), the court did not consider them in determining whether to grant a permanent injunction.

harm *pendente lite*; therefore, such delay may justify denial of a preliminary injunction for trademark infringement.")). Notably, each of the cases relied on by Orange Whip addresses the standard for assessing a *preliminary* injunction, not a permanent injunction. Thus, the court is not entirely persuaded that Orange Whip's arguments regarding the timing of Hark'n's request are applicable here. After all, preliminary injunctions and permanent injunctions serve different purposes. "[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Meanwhile, "[a] permanent injunction serves a distinct function; '[a] permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action . . . against a defendant and that equitable relief is appropriate.'" *New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 401 F. Supp. 3d 1229, 1351 n.93 (D.N.M. 2019) (quoting *Tri-Dam v. Yick*, 2016 WL 4061348, at *5 (E.D. Cal. July 28, 2016)).

What's more, in assessing the totality of Orange Whip's argument regarding timing, it appears to be Orange Whip's view that a preliminary injunction is a necessary prerequisite to obtaining a permanent injunction. In this matter, Hark'n never sought a preliminary injunction; thus, in applying Orange Whip's reasoning, Hark'n would be precluded from seeking a permanent injunction. Upon consideration of the arguments raised by both parties, the court is not inclined to endorse Orange Whip's view. In its reply, Hark'n asserts that the relevant statute and case law "are clear that pursuing a preliminary injunction is not a prerequisite to a permanent injunction" (ECF 339 at 20). In support of this argument, Hark'n points out matters within the Tenth Circuit where a permanent injunction was granted despite a preliminary injunction never having been sought or granted. *See, e.g.*, *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, No. CIV-14-650-F (W.D.

Okla.) (see court docket); *Sw. Stainless, L.P. v. Sappington*, No. 07-cv-0334-CVE-FHM (N.D. Okla.) (see court docket). Furthermore, in *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006), the Tenth Circuit seemingly endorsed the position that a request for a permanent injunction was appropriately preserved where "Plaintiffs' complaint contained a request for injunctive relief, and Plaintiffs reiterated their request after trial." *Id.* at 1243 n.8. Indeed, in *Australian Gold*, the plaintiffs made clear to the district court they were not seeking a preliminary injunction, *see Australian Gold, Inc. v. Hatfield*, No. 5:02-cv-00143-C (W.D. Okla. Mar 20, 2002) (Dkt. No. 14 at 8), and a preliminary injunction was never granted. Nevertheless, the plaintiffs were granted a permanent injunction following a jury verdict in their favor, and the Tenth Circuit concluded that "the district court did not err in entering an injunction in this case," *see* 436 F.3d at 1243. The same fact scenario is present here, where Hark'n's Complaint contains a request for injunctive relief (ECF 2 at 47), and that request has been reiterated after trial (ECF 307). Accordingly, the court finds Hark'n's reasoning on this point persuasive and notes that Orange Whip has not presented any case law to the contrary.

Under 15 U.S.C. § 1125(a), Hark'n is entitled to a presumption of irreparable harm, and nothing in the arguments presented or the record demonstrates that this presumption has successfully been rebutted. Thus, the court finds that this factor weighs in favor of granting Hark'n a permanent injunction.

2. Remedies available at law

In its written opposition to the motion, Orange Whip requested that, if the injunction is granted, that it be given time to "sell-off" the remaining products and, during oral argument before this court, argued that it would be difficult for its business to discontinue selling the orange bands and to remove from its advertising all images of the infringing product (*see* ECF 331; ECF 392).

Hark'n asserts that Orange Whip "has still not stopped selling its infringing orange sheathed elastics" and that Orange Whip's request for time to sell its remaining products demonstrates "that it is continuing its willful infringement" (ECF 339 at 19). Based on the arguments presented, it appears that Orange Whip will continue selling bands bearing Hark'n's asserted trade dress unless a permanent injunction is in place. The court finds that this leaves Hark'n without an adequate remedy at law.

Persuasive case law demonstrates that Hark'n is without an adequate remedy at law if it were forced to continuously file suit for every new act of infringement by Orange Whip. *See, e.g.*, *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639 (N.D. Ill. 2016) ("No adequate remedy at law exists because absent permanent injunctive relief, [Plaintiff] would be forced to repeatedly file suit any time Defendants . . . infringe Plaintiff's trademark rights in the future."). This court has even found that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since *there is no adequate remedy at law for* the injury caused by a defendant's *continuing infringement*." *BMW of N. Am.*, 2020 WL 1325278, at *8 (emphases added) (quoting *Century 21*, 846 F.2d at 1180); *see also ClearOne Commc'ns, Inc. v. Chiang*, 608 F. Supp. 2d 1270, 1279 (D. Utah 2009) (recognizing a "cognizable danger" of future violations supports granting a permanent injunction).

Furthermore, the jury's finding that Orange Whip's infringement was willful also supports the determination that a monetary remedy would be insufficient in this matter. *See ClearOne Commc'ns*, 608 F. Supp. 2d at 1281 (stating that the nature of the misappropriation, that it was "willful and malicious," supported finding that there was no adequate remedy at law).

For those reasons, the court agrees with Hark'n that the remedies available at law are inadequate; thus, this factor also weighs in favor of granting the injunction.

3. <u>The balance of hardships</u>

Under this element, Hark'n must show "that the injury to it if the injunction does not issue outweighs the injury to" Orange Whip. *See ClearOne Commc'ns*, 608 F. Supp. 2d at 1281 (quoting *Tri–State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 356 (10th Cir. 1986)).

In considering the misappropriation of trade secrets, this court has previously noted that "any harm the Defendants suffer from the [issuing of an] injunction is the result of their own misconduct." *Id.* Thus, the court concluded that "there can be no harm to the Defendants by enjoining them from engaging in illegal activities." *Id.*; *see also Klein-Becker USA, LLC v. Englert*, No. 2:06-cv-378-TS, 2011 WL 147893, at *17 (D. Utah Jan. 18, 2011) (finding that the defendants "have no legitimate interest to be protected in their actions which have been found to be violation of the Lanham Act"). In accordance with this case law, Orange Whip will suffer no harm if a permanent injunction is issued.

Nevertheless, Orange Whip has asserted that the injury it will suffer if an injunction is issued far outweighs any injury to Hark'n (ECF 331 at 19–20). Orange Whip however has also argued that it could potentially mitigate this injury and recoup some of its losses if it were allowed "to re-sleeve any residual units with neutral colors" (*id.* at 18). While the case law suggests that Orange Whip cannot suffer any harm from an order enjoining it from engaging in illegal activities, the fact that any alleged injury could be mitigated supports granting the injunction. In issuing an injunction, the court will accordingly provide Orange Whip the opportunity to mitigate any supposed injury by giving it the opportunity to "re-sleeve any residual units with neutral colors."

Taking into account the facts of this case, along with the jury's verdict, the court is persuaded that the injury to Hark'n if the injunction does not issue outweighs the injury to Orange

26

Whip. This is particularly so given the jury's finding that Orange Whip's infringement was "willful" (ECF 300). Thus, this factor also weighs in favor of granting the injunction.

4. Public interest

As to the public interest factor, the term "[p]ublic interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Poulin Ventures, LLC v. MoneyBunny Co.*, No. 1:19-cv-01031-JCH-GBW, 2022 WL 326286, at *8 (D.N.M. Feb. 3, 2022) (quoting *Builders Tr. of New Mexico v. Resol. Assurance Grp., Inc.*, No. CIV 09-0249 RB/GBW, 2010 WL 11597294, at *9 (D.N.M. Mar. 12, 2010)). To that end, "[p]ublic interest in fair competition dictates that [a] Defendant should not be allowed to profit off the efforts of [a] Plaintiff in achieving its commercial success." *Kodiak Cakes LLC v. Cont'l Mills, Inc.*, 358 F. Supp. 3d 1219, 1237 (D. Utah 2019). Thus, public interest "disfavors allowing competition at the expense of customer confusion." *Id.*

Here, there was some limited evidence demonstrating consumer confusion. At trial, while cross-examining Mr. Harker, counsel for Orange Whip asked whether he had "provided something for [his] attorney to share with this jury about actual confusion" (ECF 314 at 157–158). Mr. Harker responded in the affirmative, stating he had received phone calls from "four, five or six people" who associated the color "orange" with Hark'n's products (*id.*). Counsel attempted to strike Mr. Harker's answer, but the court denied this request (*id.*). Furthermore, evidence showed that Orange Whip's website and advertisements displayed images of the prototypes created by Hark'n while simultaneously selling bands that were manufactured by a third party (*see, e.g.*, Pl. Ex. 37, ECF 315 at 114), which strongly suggests Orange Whip has been profiting off of Hark'n's efforts in achieving its own success. The COO of Orange Whip even testified at trial that while "the videos and still shots" of Hark'n's products were on Orange Whip's website, "the bands that

[Orange Whip] were selling were the bands that were supplied by Ideal Joy" (ECF 315 at 114). Based on the totality of the evidence presented at trial, the court finds that "[u]nless the court enjoins [Orange Whip's] infringement, the public will continue to be deceived, confused, and harmed by [Orange Whip's] unlawful conduct." *See Pure Maint. Holdings, LLC v. Mold Zero Servs., LLC*, No. 1:25-cv-00111-RJS, 2025 WL 2374353, at *5 (D. Utah Aug. 14, 2025).

Thus, the court finds that issuance of a permanent injunction is in the public interest.

### III.    CONCLUSION AND ORDER

For the foregoing reasons, the court concludes and orders as follows:

1. Hark'n's disgorgement motion (ECF 328) is GRANTED IN PART and DENIED IN PART. The court grants Hark'n's request to award a disgorgement of profits and denies the request that this award be enhanced;

2. Orange Whip's disgorgement motion (ECF 329) is DENIED;

3. Hark'n is awarded $978,024.00 in disgorged profits from Orange Whip;

4. Hark'n's Motion for Prejudgment Interest (ECF 306) is DENIED; and

5. Hark'n's Motion for Permanent Injunction (ECF 307) is GRANTED. An order dictating the precise terms of the injunction will be entered separately.


IT IS SO ORDERED.

DATED this 26 September 2025.


Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah