IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| HARK'N TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ORANGE WHIP FITNESS X, LLC, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [312] PLAINTIFF'S MOTION FOR ATTORNEY FEES** <br><br> Case No. 1:21-cv-00054-CMR <br><br> Chief Magistrate Judge Cecilia M. Romero |

Before the court is Plaintiff Hark'n Technologies, Inc.'s (Hark'n) Motion for Award of Attorney Fees (Motion) (ECF 312). The court also considered the Declarations of Alan C. Bradshaw and Steven Bean in support of the Motion (ECF 309 and 310), Defendant Orange Whip Fitness X, LLC's (Orange Whip) Opposition (ECF 336), Hark'n's Reply (ECF 352), and the Supplemental Declarations submitted with Hark'n's Reply (ECF 353, 354, 355 and 419). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and will decide this matter on the materials presented in the written memoranda. *See* DUCivR 7-1(g). For the reasons herein, the court DENIES Hark'n's Motion.

## I.    BACKGROUND

Following a weeklong trial, a jury ruled in favor of Hark'n on three claims (ECF 300).[1] The jury found Orange Whip willfully infringed Hark'n's trade dress and engaged in unfair competition (*id*.). It also determined that Orange Whip's profits from infringement and unfair

---

[1] Given the parties' familiarity with the facts and procedural history of this dispute, the court will reiterate only the facts and procedural history relevant to the instant motion. A more fulsome description is included in previous court orders (*see, e.g.*, ECF 160 & ECF 251 (memorandum decisions ruling on the motions for summary judgment)).

1

competition totaled $978,024.00 (*id.*). For unjust enrichment, Hark'n was awarded $37,500.00 in damages (*id.*).

Hark'n brings the current Motion, arguing it is entitled to costs, non-taxable costs, and attorney fees. Specifically, Hark'n initially sought an award of $776,560.00 in attorney fees, which was later increased to $988,458.50 (ECF 309 and 419 at 27), $13,904.49 in taxable costs (ECF 309), and $43,633.92 in non-taxable costs (ECF 309). With regard to the claim for attorney fees, Hark'n argues that fees must be awarded because the two Lanham Act criteria are met: it is the prevailing party, and this is an exceptional case. Hark'n asserts that it is the prevailing party "due to the jury's unanimous verdict in Plaintiff's favor on all claims before it" (ECF 312 at 24). Hark'n argues this is an "exceptional case" due to its strong litigation position and Orange Whip's repeated use of unreasonable, bad faith, vexatious, and abusive gamesmanship tactics throughout the litigation (*id.* at 10–21; 26–28).

Orange Whip responds that Hark'n's Motion is untimely as it was filed before "the entry of a final judgment" (ECF 336 at 6 (citing DUCivR 54-1(2)(A)).[2] Orange Whip further asserts that although the jury found in favor of Hark'n, Hark'n is not the "prevailing party" because its Complaint claimed ten causes of action but only three of the ten claims succeeded (*id.* at 7–8, 13–17). Orange Whip argues that when the entire litigation is considered, it was the prevailing party because it successfully dismissed "over 80%" of Hark'n's claims and obtained several other wins during the case (*id.*). It also asserts that its conduct in litigation was not "extraordinary;" rather, Hark'n engaged in "extraordinary" conduct by filing the suit in bad faith and pursuing the case in a vexatious, oppressive, and bad-faith manner (*id.* at 8–13).

---

[2] The court's judgment in favor of Hark'n has since been entered (ECF 410), making this argument moot.

## II.   DISCUSSION

### A.  Attorney Fees

Hark'n argues it is entitled to attorney fees under the Lanham Act because this case is exceptional. Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Thus, a party seeking the attorney fees must establish both "that (1) it is a 'prevailing party' and (2) the case is 'exceptional.'" *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1236 (10th Cir. 2018). The court will address whether Hark'n has proven that the case is exceptional.

#### 1.  Exceptional Requirement

An "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).[3] While there are not any specific controlling factors the court must consider, district courts may consider the factors enumerated in the *King* case: "(1) [the case's] lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well." *King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 592 (10th Cir. 2007); *accord Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1246 (10th Cir. 2021) (finding that the *King* factors "remain useful inquires for identifying exceptional cases under the *Octane* standard"). However, "no one factor is determinative." *Derma Pen,* 999 F.3d at 1244 (quoting

---

[3] Although the *Octane* court analyzed the attorney fee provision of the Patent Act, 35 U.S.C. § 285, the Tenth Circuit has determined that the same standard also governs attorney fees under § 1117(a) of the Lanham Act. *See Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1245 (10th Cir. 2021) (holding that the *Octane* standard applies to fee awards for exceptional cases under the Lanham Act).

*Nat'l Ass'n of Pro. Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1147 (10th Cir. 2000)).

Ultimately, "there is no precise rule or formula for making these determinations," *Octane Fitness*, 572 U.S. at 554 (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994)). District courts are instructed "to determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (citing *Fogerty*, 510 U.S. at 534). The Tenth Circuit has also recognized that district courts are well-equipped to decide exceptionality, given the district court's singular familiarity with the case. *Derma Pen*, 999 F.3d at 1245 (explaining the deferential standard of review for a district court's finding of exceptionality given its "singular [] familiarity" with the case).

Here, the court has overseen this contentious litigation for nearly five years and, after considering the totality of the circumstances, concludes that this case is not exceptional for the following reasons.[4]

### a.  Substantive Strength of Hark'n's Litigation Position

The court first determines whether the substantive strength of Hark'n's litigation position weighs in favor of exceptionality. *See Derma Pen*, 999 F.3d at 1246 (10th Cir. 2021) (courts must evaluate reasonableness of positions "based on the strength of the litigant's case under the governing law and the facts"). The strength of Hark'n's case under the governing law and facts was apparent for the three causes of action that went to trial: trade dress infringement, unfair competition, and unjust enrichment (ECF 300 and ECF 410). Additionally, the jury found that

---

[4] The court does not assess which party was the prevailing party under the Lanham Act's two-part test or the appropriateness of the requested fee amount because it ultimately concludes that this case is not exceptional. The court does, however, consider the prevailing party standard in a later section of this Order when ruling on Hark'n's claim for taxable costs.

Orange Whip's infringement of Hark'n's trade dress and unfair competition was willful (ECF 300). While the jury found willful infringement, no single factor, including willful infringement, is determinative. *See Derma Pen,* 999 F.3d at 1244.

Furthermore, under the totality of the circumstances, the court evaluates the strength of Hark'n's litigation position as a whole. While the governing law and facts of the case were strong enough to support willful infringement of Hark'n's claims that made it to trial, seven of Hark'n's claims were dismissed on summary judgment for lack of legal and/or factual support (*see* ECF 160 and ECF 251), which is a factor to consider when determining exceptionality. *See Purple Innovation, LLC v. Responsive Surface Tech., LLC*, No. 2:20-CV-00708-RJS, 2025 WL 590309, at *2 (D. Utah Feb. 24, 2025) ("The court considers factors such as a case's lack of foundation . . .") (citing *King*, 485 F.3d at 584 (10th Cir. 2007)).

Hark'n contends the dismissed claims "are inextricably related to its successful claims and, if successful, would have afforded little, if any, relief not obtained on the claims Plaintiff prevailed upon" (ECF 352 at 7). Hark'n misinterprets the exceptionality analysis, which focuses on the substantive strength of a party's litigation position, not the potential relief that could be obtained. Accordingly, the court cannot fully determine the substantive strength of Hark'n's litigation position without also considering the fact that Hark'n's breach of contract, fraud, trademark infringement, trade secret misappropriation under state and federal law, unfair competition under state law and false designation of origin claims were all dismissed for failing to have legal or factual support; four of which are claims under the Lanham Act (*see* ECF 160 and ECF 251). Additionally, the claims brought against Douglas Wald and Brian Newman were also dismissed (*id*.). While three claims were strong enough to present to the jury, the overall strength of the case

is diminished by the seven dismissed claims. Notwithstanding, although the substantive strength factor is mixed, the court finds that, based on the trial results, it still favors Hark'n.

b.   The manner in which the case was litigated

While the strength of Hark'n's litigation position weighs in favor of exceptionality, the court also considers the manner in which the case was litigated. For the reasons stated below, the court finds that the manner in which the case was litigated weighs against any finding of exceptionality.

In *Alfwear, Inc. v. Mast-Jägermeister U.S., Inc.*, the court carefully evaluated the record under the post-*Octane* totality-of-the-circumstances framework and recommended that the defendant's motion for attorney fees be denied because the case did not "stand out" from ordinary Lanham Act litigation. *Alfware, Inc. v. Mast-Jaegermeister US, Inc.*, No. 2:17-CV-00936-TC-DBP, 2021 WL 4247946, at *2 (D. Utah Sept. 17, 2021), *report and recommendation adopted sub nom. Alfwear, Inc. v. Mast-Jagermeister US, Inc.*, No. 2:17-CV-00936-TC-DBP, 2022 WL 485173 (D. Utah Feb. 17, 2022), *aff'd*, No. 22-4020, 2023 WL 8232072 (10th Cir. Nov. 28, 2023).[5]

In *Alfwear*, the defendant successfully dismissed all claims on summary judgment and later sought fees, asserting that the case was exceptional. *Alfwear*, 2021 WL 4247946, at *1–2. In support of its argument for exceptionality, the defendant asserted "eight discrete facts," which it claimed supported the plaintiff's "aggressive litigation tactics." *Id*. Judge Pead specifically found that both parties litigated the case aggressively and in a hard-fought manner, and that neither side's conduct, when viewed in context, rendered the case exceptional. *Id*. ("ALFWEAR did not engage in unreasonable litigation tactics, rather based on the facts before the court, ALFWEAR engaged in hard-fought litigation practices that often appear before the court. Moreover, as noted by

---

[5] The court notes that the correct spelling of the plaintiff's company name is "Alfwear," not "Alfware" as designated in the case name caption, and therefore the court will hereinafter refer to this case as "Alfwear."

ALFWEAR in its opposition, MAST-JÄEGERMEISTER engaged in similar hard-fought litigation practices."). Ultimately, despite the defendant's success at summary judgment, Judge Pead concluded that there was "no bad faith, fraudulent behavior, vexatious litigation, or totality of circumstances making th[e] case exceptional." *Id*. at *4.

Judge Tena Campbell adopted Judge Pead's findings in full, agreeing that the record reflected a contentious case with "enough acrimony to go around" rather than one-sided abusive conduct. *Alfwear*, 2022 WL 485173, at *2. Judge Campbell further concluded that because both parties engaged in aggressive advocacy, and because neither party's behavior "crossed the line," the case was not exceptional. *Id*.

The Tenth Circuit later affirmed, stating that it was within the court's discretion "to weigh the evidence regarding the parties' litigation conduct in making its exceptionality determination, and because its 'equivalence' finding is a permissible view of the evidence, we will not disturb it even if, under [defendant's] narrative, the evidence also would have supported a different conclusion." *Alfwear*, 2023 WL 8232072, at *4 (citing *Manning v. U.S.*, 146 F.3d 808, 813 (10th Cir. 1998)). The Tenth Circuit further found that "[t]he court's failure to mention each instance of alleged litigation abuse and to address every aspect of [defendant's] argument does not mean the court failed to consider the full story. Its explanation is sufficient to satisfy us that its decision was not arbitrary." *Id*. (citing *Derma Pen*, 999 F.3d at 1245 n.2.). The Tenth Circuit concluded its denial of attorney fees by making the following statement:

> [Defendant's] arguments boil down to a disagreement with the outcome of the district court's weighing of the evidence and its discretionary determination based on the totality of the circumstances that this case was not exceptional. We will not reweigh the evidence, however, and see no basis for setting aside the district court's ruling. By the time the court decided the motion for fees, it had presided over this case for about five years. It was thus "singularly familiar" with the case and the parties, and it was in the best position to decide whether this is an "exceptional" or "routine" case[.]

*Id*. at \*4 (citing *Derma Pen*, 999 F.3d at 1245).

The Tenth Circuit's reasoning in *Alfwear* makes clear that courts can assess both parties' conduct rather than only focus on the missteps of one side. *Alfwear* also makes clear that even where litigation is hard-fought and contentious, the district court can find that a case is not exceptional when that intensity is reciprocal or equivalent. The court finds *Alfwear* persuasive, given that the parties in the present matter both engaged in hard-fought litigation practices.

Hark'n, relies on this court's ruling in *Purple* (*see* ECF 312 at 28 and ECF 352 at 23–24), but this reliance is misplaced. *See Purple Innovation, LLC v. Responsive Surface Tech., LLC*, No. 2:20-CV-00708-RJS, 2025 WL 590309, at \*3–4 (D. Utah Feb. 24, 2025).   In *Purple*, the exceptionality examination concentrated on the bad-faith litigation conduct of one party. *Id*. at \*3–4. The plaintiff in *Purple* asserted that the case was exceptional because the defendants engaged in discovery abuse, fraud, the forging of evidence, the giving of false testimony, the destruction of evidence, the inflation of claims, and other alleged egregious conduct. *Id*. at \*3. The defendants countered by offering reasons to explain their alleged egregious conduct, but they did not provide any evidence that the plaintiff also engaged in behavior equivalent to theirs. *Id*. Thus, the *Purple* court, when considering the totality of the circumstances, did not have to weigh any corresponding bad-faith conduct by the plaintiff. *Purple* was, in substance, a record of one-sided litigation abuse.

The facts of the present case are fundamentally different from those in *Purple* and more similar to those in *Alfwear*. Here, while Hark'n has devoted substantial effort to detailing what it characterizes as Orange Whip's misconduct (ECF 312 at 26), like the facts in *Alfwear*, Orange Whip, in its Opposition, asserts that Hark'n has engaged in similar misconduct (ECF 336 at 8). Orange Whip specifically argues that Hark'n "attempts to inappropriately characterize Defendants and counsel as liars, all while feigning ignorance of its own improprieties in this suit" (*id*. at 5).

Accordingly, *Purple* does not control the outcome here. The analogous case is *Alfwear*, where, as here, both parties litigated aggressively. Therefore, the following analysis of the manner in which this case was litigated includes the conduct of both parties.

Hark'n's fee request identifies eleven (11) instances of alleged misconduct by Orange Whip (ECF 312 at 26–27). These eleven instances fall into three main categories of misconduct: (1) submission of incorrect declarations, (2) discovery abuses, and (3) meritless motions. The court considers each category in turn.

c.    Incorrect Declarations

Hark'n argues that Orange Whip submitted incorrect declarations in support of a motion to dismiss and at the summary judgment stage, which demonstrates the unreasonable manner in which Orange Whip litigated this case (*id.*). While submitting false/incorrect declarations is serious, as Orange Whip highlights in its Opposition (ECF 336 at 11), Hark'n itself submitted incorrect declarations. Hark'n submitted signed declarations from three of its attorneys, asserting that each had no recollection of a conversation regarding the production of representative samples (ECF 218-2, -3, -4). Orange Whip, however, provided the court with a transcript of a recording of the meet and confer, which unequivocally demonstrated that at least one of Hark'n's attorneys not only knew of the sample request but agreed to send samples (ECF 248; *see also* ECF 277 at 13).[6]

Hark'n goes to great lengths to downplay these incorrect declarations by questioning whether Orange Whip actually needed the samples, and by asserting that it is reasonable that the attorneys on the phone during the meet and confer did not remember Orange Whip's request (ECF

---

[6] The court notes that the fact that Orange Whip's counsel felt it necessary to record a routine meet and confer is indicative of the contentious environment in which this case was litigated. The court also commented on more than one occasion during hearings, the tension between the parties and/or their behavior, with the court reminding the parties at the final pretrial conference that "I've already given you the expectation that facial expressions, body movements suggesting disagreement with the court or the other party, head shaking or general frustrations should not be expressed at all" (ECF 282 at 3:22:56 to 3:23:08).

352 at 9–10). Despite Hark'n's attempt to justify the incorrect declarations of its attorneys, the court finds that, because both parties engaged in similar misconduct, the submission of incorrect declarations does not weigh in favor of exceptionality. Hark'n itself appears to agree that its incorrect declarations are similar to those filed by Orange Whip by admonishing Orange Whip for claiming that Hark'n "lied" to the court, even though Hark'n refrained from classifying Orange Whip's actions as "lies" (ECF 352 at 10 ("Further, under Defendant's theory that the inability to recall equates with a lie, Wald and Newman's inability to remember a key conversation with Mr. Bean would also be a lie about a crucial piece of evidence in the case—something Plaintiff's counsel has been careful not to misstate. Unfortunately, Plaintiff's counsel has not received the same professional courtesy from Defendant's lawyers.")). The record indicates that Hark'n effectively acknowledges that the declarations suffered from similar deficiencies, rather than establishing that one party's conduct was more egregious.

Consequently, this issue of incorrect declarations to the court does not set the case apart; it merely indicates mutual errors in litigation rather than unilateral misconduct.

### d.  Discovery Abuses

The manner in which both parties engaged in discovery does not support a finding of exceptionality. Both parties were admonished for initially not moving the matter forward and for engaging in informal discovery outside of the court's scheduling order (*see* ECF 88 at 14:35 to 15:01). On April 30, 2024, the court heard arguments on a Motion to Enforce a Scheduling Order and Motion to Compel wherein it was noted that discovery was taking place well outside the then operative scheduling order and the concerning behavior of both parties with the court questioning why a motion to enforce a scheduling order of the court was even necessary (*see* ECF 83 at 11:13 to 11:14, and 11:16:14 to 11:16:35 ("[Q]uite frankly, I thought we were coming today to set this

matter for a trial, that is what umm we were moving toward, I had no idea that the parties were still engaging in discovery. I thought we going to be setting this matter for a trial later this summer . . .")). At the May 3, 2024, continued discovery hearing, both parties were again admonished with the court noting, "at the last hearing [April 30, 2024 or ECF 83], I made it clear that I thought all of the parties were not diligently focusing on this case in the way that they should've, the correspondence supported that … all of you were busy working on other matters, and the attention and detail that should have been given on this case was simply not given, that everyone was engaging in … informal discovery outside the scheduling order …" (ECF 88 at 14:35 to 15:01). The court's comments during these hearings indicate concerns about both parties and the manner in which they were engaging in concerning behavior during initial discovery. It also shows that the conduct was attributed to both parties, not just Orange Whip.

Moreover, turning to Hark'n's arguments, Hark'n argues that Orange Whip engaged in discovery abuse by (1) modifying certain interrogatory responses and (2) declining to proceed with an agreed discovery extension and instead seeking the enforcement of the scheduling order (ECF 312 at 26–27). Hark'n is correct in asserting that this conduct should be considered when determining the manner in which the case was litigated. However, the question is not whether any discovery misstep occurred, but whether the case as a whole is distinguished as exceptional.

Here, Hark'n's own conduct during discovery undermines any assertion of exceptionality. Most notably, Orange Whip repeatedly requested physical samples of the allegedly infringing product, and Hark'n assured that the samples would be provided, including specific representations that the samples would be sent promptly (*see* ECF 277 at 13). Despite these assurances, the court has already determined that "Plaintiff had notice, [received] multiple requests for the samples from Defendant, and simply failed to produce them" (*id.*). In considering this issue, the court even stated

that "Plaintiff's failure to provide these samples also appear to have been willful and not in good faith" (ECF 277 at 13). Hark'n's assertion that Orange Whip never informally sought a sample (ECF 352 at 10) is unfounded and disingenuous.

Hark'n correctly asserts, however, that Orange Whip could have sought the samples more formally (*id*.). Nevertheless, Orange Whip's failure to act does not negate the fact that Hark'n provided assurances about production, allowed Orange Whip to depend on the assurances, submitted statements claiming no such assurances were made, and later used the lack of a formal request to justify not producing.

The court fails to distinguish Hark'n's conduct—providing assurances about the samples and later asserting that it did not have to produce them because Orange Whip could have sought a formal request—from Orange Whip's assertion of an extension and its attempt to force the scheduling order despite that assurance (*see* ECF 312 at 26–27). Hark'n's conduct, however, involved evidence that Orange Whip claimed was necessary for its case, and Orange Whip did not double down on its assertions by submitting multiple incorrect affidavits from its attorneys.

Thus, when the conduct of both parties is considered, the record reflects mutual concerning behavior and errors during the discovery process, not the type of one-sided misconduct that would render this case exceptional.

e.  Meritless Motions

Hark'n further contends that Orange Whip's filing of certain motions, particularly Orange Whip's motions to preclude Hark'n's former counsel from testifying, constitutes unreasonable litigation conduct (ECF 312 at 26–27). In this context, Hark'n's characterization of Orange Whip's actions as "meritless motion practice" is unpersuasive when compared to Hark'n's own conduct. When ruling on Orange Whip's Motion for Attorney Fees (ECF 386), the court determined that

Hark'n continued to pursue objectively specious trade secret claims in bad faith (*see* the court's Memorandum and Decision on Orange Whip's Motion for Attorney Fees filed contemporaneously with this Order). Even assuming that one or more of Orange Whip's motions lacked merit, the totality-of-the-circumstances analysis requires the court to weigh that against Hark'n's prosecution of multiple claims that were ultimately deemed meritless and pursued in bad faith. Therefore, Hark'n's reliance on Orange Whip's motion practice provides no basis for exceptionality.

In summary, the record indicates that both parties initially were exceptionally dilatory in pursuing discovery, engaged in hard-fought litigation, and committed missteps along the way. Because of this, the court does not find this case exceptional. *See Alfwear,* 2021 WL 4247946, at *1–2.

### B.  Non-Taxable Costs

Hark'n seeks $43,633.92 in non-taxable costs (ECF 309-4), citing to *Purple*, 2025 WL 590309, at *8, as well as the court's inherent authority (ECF 312 at 29-30). Hark'n asserts the court may award "incidental and necessary expenses incurred in furnishing effective and competent representation" (ECF 312 at 3 (citing *Purple*, 2025 WL 590309, at *8)). While the court may award non-taxable costs, as explained in the *Purple* case, non-taxable costs are awarded "as part of an award of attorney fees[.]" *See Purple*, 2025 WL 590309, at *8. Hark'n cites no case law or authority in which the court denied attorney fees (as is the case here), yet granted non-taxable costs.

Moreover, Hark'n's alternative argument for non-taxable fees under the court's inherent authority to award non-taxable costs in "exceptional cases" is not persuasive, as the court has determined that this case is not exceptional. *See Alfwear*, 2021 WL 4247946, at *3 ("Defendant's

reliance upon this case as being 'exceptional' for awarding costs and fees is foreclosed by the court's prior finding that this is not an exceptional case.").

The court therefore DENIES Hark'n's request for non-taxable costs.

**C.  Taxable Costs**

Hark'n also seeks an award of its taxable costs (ECF 312 at 32–33) pursuant to Rule 54(d)(1), which provides "[u]nless . . . a court provides otherwise, costs—other than [attorney] fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Whether or not a prevailing party shall be awarded costs is "within the court's sound discretion." *Homestake Mining Co. v. Mid–Continent Exploration Co.*, 282 F.2d 787, 804 (10th Cir. 1960). Nevertheless, the Tenth Circuit has noted that Rule 54 "creates a presumption that the district court will award the prevailing party costs." *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004). "The burden is on the non-prevailing party to overcome the presumption." *Alfwear*, 2021 WL 4247946, at *4.

Moreover, while the court understands that costs are presumptively awarded to the prevailing party, courts have denied costs in cases where "neither side entirely prevailed, or when both sides prevailed, or when the litigation was thought to be the result of fault on the part of both parties[.]" *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234–35 (10th Cir. 2001) (quoting Wright & Miller, *Federal Practice & Procedure,* § 2667 Award of Costs to the Prevailing Party, 10 Fed. Prac. & Proc. Civ. § 2667 (4th ed.)); *see also Testa v. Village of Mundelein,* 89 F.3d 443, 447 (7th Cir.1996) ("Considering the mixed outcome of the civil rights and malicious prosecution claims, the decision requiring each party to bear its own costs is within that discretion.").

Here, Hark'n asserts its taxable costs amount to a total of $13,904.49 (ECF 309-3)[7] and claims the total costs come from the following category of expenses as enumerated in 28 U.S.C. § 1920: Fees of the Clerk ($402), Fees for Service ($385), Fees of Court Reporter for Transcripts ($1492.50), Fees for Exemplification and Copies ($2,920.40), Costs Incident to Taking Depositions ($8,704.59) (*id*.). Orange Whip's main contentions regarding the award of taxable costs are that Hark'n is not the prevailing party (ECF 336 at 7–8), and even if Hark'n is the prevailing party, its fees are unreasonable because Hark'n has made "no differentiation between the fees and costs of the claims which were successful and which were dismissed" (*id*. at 18).

The court disagrees that Hark'n was not the prevailing party for the purpose of determining costs. Judgment was entered in its favor on three claims, *see e.g.*, *Barber*, 254 F.3d at 1234 ("[u]sually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)[(1)]"). That said, the court agrees there was no distinction between the fees and costs of successful claims and those dismissed. As a result, the court will reduce the amount and award $10,000.

### III.   CONCLUSION AND ORDER

When the totality of the circumstances is considered, the court does not find that this case is exceptional. Therefore, Hark'n's Motion for Attorney Fees (ECF 312) is **DENIED**. The court, however, awards $10,000 in taxable costs.

IT IS SO ORDERED.

DATED this 24 March 2026.

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah

---

[7] The court notes that Hark'n submitted a Supplemental Affidavit (ECF 419) in which it increased its attorney fees (*id*. at 2). The Supplemental Affidavit makes no mention of an increase in taxable costs; thus, the court determines that $13,904.49 is the amount spent on taxable costs.

15