**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| HARK'N TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ORANGE WHIP FITNESS X, LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [431] PLAINTIFF'S MOTION TO FIND DEFENDANT IN CIVIL CONTEMPT**<br><br>Case No. 1:21-cv-00054-CMR<br><br>Chief Magistrate Judge Cecilia M. Romero |

Before the court is Plaintiff Hark'n Technologies, Inc.'s (Hark'n) Motion to Find Defendant in Civil Contempt (Motion for Civil Contempt) (ECF 431). The court also considered Defendant Orange Whip Fitness X, LLC's (Orange Whip) Opposition (ECF 442) and Hark'n's Reply (ECF 451). On September 15, 2026, the court heard oral argument on the Motion and took it under advisement (ECF 500). Having carefully considered the relevant filings and the arguments raised during the hearing, for the reasons set forth below, the court GRANTS IN PART the Motion for Civil Contempt.

## I. BACKGROUND

After a weeklong trial, a jury entered a verdict for Hark'n on April 28, 2025 (ECF 300).[1] The jury found that Orange Whip willfully infringed Hark'n's elastic bands of varying lengths, girths, and resistances covered in orange, crinkled sheathing (the Orange Trade Dress), engaged in unfair competition, and unjustly enriched itself (*id.*). The jury found that Orange Whip's profits from infringement and unfair competition totaled $978,024.00 (*id.*). The jury relied on sales data

[1] Given the parties' familiarity with the facts and procedural history of this dispute, the court will reiterate only the facts and procedural history relevant to the instant motion. A more fulsome description is included in previous court orders (*see, e.g.*, ECF 160 & ECF 251 (memorandum decisions ruling on the motions for summary judgment)).

for seven stock keeping units (SKUs) (collectively, the Infringing SKUs) (*see* ECF 407 at 4–5 (citing Pl. Trial Exs. 13, 14, 14.1, 27, 45)).

On September 26, 2025, the court entered Judgment (ECF 410) and a Permanent Injunction (ECF 409). The Permanent Injunction placed the following restrictions and obligations upon Orange Whip:

1. Defendant, its officers, agents, servants, employees, attorneys, and all persons or entities acting for, with, by, through, under, or in active concert or participation with Defendant are permanently and forever enjoined from:

    a. Directly or indirectly using, infringing, contributing to the infringement, or inducing the infringement in connection with the sale, offering for sale, marketing, advertising, or distribution of any product that includes or bears Plaintiff's Orange Trade Dress, or any reproduction, counterfeit, copy or colorable imitation thereof, on or in combination or connection with any products or services, or in any manner enabling or aiding others to do the same;

    b. Directly or indirectly causing or creating a situation likely to cause confusion or deception to the public about the source, sponsorship, or approval, of Plaintiff's Orange Trade Dress products by any means.

2. Defendant, within 30 days after Defendant is served with this Permanent Injunction, must:

    a. Either (1) destroy; or (2) otherwise modify by removing all orange-colored sheathing and if replacement sheathing is used it must be of a color other than orange; any products within its possession, custody, control, or inventory which include or bear Plaintiff's Orange Trade Dress; and

    b. Defendant's advertising, sale, or use of all Defendant's products must comply with paragraph 1 and not infringe upon or create a likelihood of confusion regarding the source, sponsorship, or approval of the products, including all websites owned or operated directly or indirectly by Defendant.

3. Defendant, consistent with 15 U.S.C. § 1116(a), must file with the court and serve on Plaintiff within 30 days after the Defendant is served with this Permanent Injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with this Permanent Injunction, including providing an accounting of all products in inventory or

> otherwise in its possession, custody, or control that bear Plaintiff's Orange Trade Dress, the specific number and manner in which Defendant destroyed or modified said products in compliance with paragraph 2, and proof sufficient to demonstrate that such products have in fact been destroyed or modified as required.

(ECF 409 ¶¶ 1–3). On October 17, 2025, Hark'n filed a Motion to Augment the Judgment (ECF 420).

On October 27, 2025, Orange Whip filed its Certificate of Compliance with the Permanent Injunction (Certificate of Compliance) (ECF 425). The Certificate of Compliance stated that Orange Whip "has complied with the Permanent Injunction," but explained that its remaining 708 orange-sleeved bands had been placed in a "do not inventory" section of its warehouse while it considered whether to destroy or re-sleeve them (*id*. at 1–2). It further reported that Orange Whip's manufacturer could cover the orange material with black material for $4.46 per band, totaling $3,157.68 (*id*. at 2). The Certificate of Compliance also stated that Orange Whip had removed all marketing materials, images, and videos depicting orange-sleeved bands from its website and social media pages (*id*.). As such, Orange Whip asserted that "all provisions of the Permanent Injunction [had] been satisfied" (*id*.). The day after filing its Certificate of Compliance, Orange Whip filed a motion requesting that the court stay the Permanent Injunction pending Orange Whip's Appeal (Motion to Stay) (ECF 428), which the court has recently denied in an order filed simultaneously with this ruling.

On November 6, 2025, Hark'n filed the present Motion for Civil Contempt (ECF 431). Hark'n alleges that Orange Whip violated the Permanent Injunction by failing to destroy or modify the OrangeTrade Dress remaining in its possession and continuing to display videos depicting the infringing products (*id*.; ECF 451). Consequently, Hark'n seeks the following remedies:

> (1) immediate destruction of the 708 bands (no re-sleeving); (2) a coercive fine in the amount of $5,000 per day until Defendant demonstrates complete compliance

> with the Permanent Injunction ¶ 2(a); (3) production of all information contained in Trial Exhibit 27 for the seven SKUs identified in that exhibit from April 1, 2025 to the present; (4) a coercive fine in the amount of $5,000 per day until Defendant demonstrates complete compliance with ¶ 1(a) and (b) and ¶ 2(b) of the Permanent Injunction; and (5) Plaintiff's attorney fees and costs incurred as a result of Defendant's non-compliance

(ECF 431 at 6–7). On June 5, 2026, Orange Whip filed its Motion to Supplement seeking leave to file supplemental facts relevant to Hark'n's Motion to Augment (*see* ECF 493). Orange Whip specifically sought leave to supplement the record with various declarations made by its CEO, Douglas Wald (Mr. Wald) (*see* ECF493-2; 495-1; and 497-1) (collectively, the Wald Declarations). For reasons detailed in a separate order being simultaneously filed with this ruling, the court granted in part Orange Whip's Motion to Supplement and has considered the Wald Declarations in making the present determination.[2]

## II. DISCUSSION

The court has broad discretion to use its contempt powers to ensure adherence to its orders. *Premium Nutritional Products, Inc. v. Ducote*, 571 F. Supp. 2d 1216, 1217 (D. Kan. 2008) (citing *Rodriguez v. IBP, Inc.,* 243 F.3d 1221, 1231 (10th Cir. 2001)). In a civil contempt proceeding, the complainant "has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Bad Ass Coffee Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. Partn.*, 95 F. Supp. 2d 1252, 1256 (D. Utah 2000) (quoting *Reliance Ins. Co. v. Mast Constr. Co.,* 159 F.3d 1311, 1315 (10th Cir. 1998). "If plaintiff makes such a showing, the burden shifts to defendants to show either that they complied with the order or that they could not do so." *Premium Nutritional Products, Inc.*, 571 F. Supp. 2d at 1217 (citing *United States v. Ford,* 514 F.3d 1047, 1051 (10th Cir. 2008)). "The

[2] In separate orders also filed simultaneously with the present ruling, the court has also granted, in part, the Motion to Augment.

contemnor's disobedience need not be 'willful' to constitute civil contempt." *Bad Ass Coffee*, 95 F. Supp. 2d at 1256 (citing *Goluba v. School District of Ripon,* 45 F.3d 1035, 1037 (7th Cir. 1995). "Indeed, a district court may adjudicate a person in civil contempt for failing to be reasonably diligent and energetic in attempting to accomplish what was ordered." *Id.* (explaining "disobedience need not be 'willful' to constitute civil contempt.").

An injunction supporting the finding of civil contempt must describe the required or prohibited conduct with sufficient specificity to provide fair notice of the party's obligations. *See* Fed. R. Civ. P. 65(d)(1). In assessing specificity, the court reads the disputed language in the context of the injunction as a whole; the order need not anticipate every possible means of noncompliance. *See Reliance*, 159 F.3d at 1315–16; *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1431–32 (7th Cir.1985) ("[Rule 65(d)] does not require the impossible. There is a limit to what words can convey . . . The right to seek clarification or modification of the injunction provides assurance, if any be sought, that proposed conduct is not proscribed.").

Nevertheless, civil contempt is inappropriate where there is a "fair ground of doubt" as to whether the order prohibited the challenged conduct. *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). This inquiry is generally objective, and a party's subjective belief that it complied does not ordinarily preclude contempt when that belief was objectively unreasonable. *Id.*

As a preliminary matter, the court finds that Hark'n has met its burden of proving that a valid court order existed in the Permanent Injunction and that Orange Whip had knowledge of the Permanent Injunction. Orange Whip does not contest these two elements. The main determination is whether Orange Whip disobeyed the Permanent Injunction. For the reasons stated below, the

court finds that Orange Whip disobeyed the Permanent Injunction and has not shown that it did, in fact, comply or that it could not do so.

1. <u>Orange Whip's failure to timely destroy or modify the 708 orange-sleeved bands.</u>

The Permanent Injunction expressly required Orange Whip, within thirty days after service, either to destroy the products bearing Hark'n's Orange Trade Dress or to modify them by removing all orange-colored sheathing (ECF 409 ¶ 2.a.). This requirement was unambiguous. The thirty-day period established a deadline for completing the destruction or modification, which Orange Whip concedes (ECF 442 at 3 ("The injunction required Orange Whip . . . to destroy or modify such products within 30 days." (citing ECF 409)). Rather than comply with the court's Permanent Injunction order, Orange Whip placed the products in a "do not inventory" section, which satisfied neither alternative. As a justification for its actions, Orange Whip asserts that placing the bands in a "do not inventory" section complies with the Permanent Injunction's "central objective: preventing consumer confusion and protecting Plaintiff's asserted trade dress" (ECF 442 at 3). Rather than comply with the unambiguous order, Orange Whip unilaterally rewrote it.

Mr. Wald's subsequent declaration confirms that Orange Whip retained the bands "pending a decision on [its] Motion to Stay and pending [its own] *determination on whether to destroy or re-sleevel the bands."* (ECF 493-2 ¶ 7) (emphasis added). Mr. Wald further states that Orange Whip eventually removed the orange sleeves from 395 bands and destroyed the remaining 313, reporting that this process was complete as of April 2, 2026 (*id*. ¶¶ 6–10).

These actions did not constitute timely compliance. Removing the bands from sale did not fulfill the separate obligation to destroy or modify products remaining within Orange Whip's possession, custody, or control. Nor did the Motion to Stay suspend that obligation. Orange Whip heavily relies on the assertion that because there was "an open possibility that the injunction will

be stayed, irreversibly destroying or modifying the bands would be premature, unreasonable, and inequitable" (ECF 442 at 3). While the court agrees that, in certain circumstances, when a motion to stay an injunction is pending, equity favors resolving that motion first and then allowing a window for compliance before considering contempt. However, this is not one of those circumstances.

Of particular importance, before filing its Motion to Stay, Orange Whip filed its Certificate of Compliance indicating that "all provisions of the Permanent Injunction [had] been satisfied" (ECF 425 at 2). This was not accurate. If Orange Whip believed it could not timely comply with the court's clear order to destroy or modify the orange bands in its possession, it should have informed the court that it was *not* in compliance or, at a minimum, sought clarification or modification. And at that time, the court would have determined whether placing the bands in "do not inventory" was sufficient. Instead, Orange Whip ignored the court's clear directives in the Permanent Injunction.

As explained above, civil contempt does not require willful disobedience; a failure to exercise reasonable diligence in carrying out the court's directive may suffice. *Bad Ass Coffee*, 95 F. Supp. 2d at 1256. Orange Whip has not shown that it took all reasonable steps to complete the required work within the compliance period or that it could not do so. The court therefore finds that Orange Whip violated paragraph 2(a) of the Permanent Injunction.

2. <u>Orange Whip's failure to timely remove (non-training) videos and images.</u>

Hark'n asserts that despite Orange Whip's alleged compliance with the Permanent Injunction, its website "Orangewhipgolf.com" continues to depict various images of orange-sheathed bands (*see* ECF 431-1 ¶¶ 4–6). In its Certificate of Compliance dated October 27, 2025, Orange Whip initially represented that it had removed all marketing materials and videos depicting

orange-sleeved bands from its website and social media pages (ECF 425 at 1–2). However, in its Opposition dated November 20, 2025, Orange Whip later acknowledged that it "has since removed the videos and images referenced by Plaintiff from its website" (ECF 442 at 4).

Here, Orange Whip had thirty days to bring its advertising and product use into compliance with the Permanent Injunction. Nevertheless, the overlooked videos and images remained available after that deadline and were removed only after Hark'n identified them. On this record, Orange Whip has not demonstrated that those violations persisted despite all reasonable efforts to achieve timely compliance. Its later removal of the videos may establish that Orange Whip acted in good faith, but this is not a defense to civil contempt. *See Universal Motor Oils Co. v. Amoco Oil Co.,* 743 F. Supp. 1484, 1487 (D. Kan. 1990) (finding that good faith is not a defense to civil contempt, although it may affect the extent of the penalty). The court therefore finds that Orange Whip violated the Permanent Injunction by continuing to display videos and images depicting infringing products on its website after the compliance deadline.

3. <u>Orange Whip's failure to remove infringing products from its training videos.</u>

Orange Whip appears to offer training videos to paying subscribers that instruct users on doing exercises and how to use its various products (*see* ECF 431-1 ¶¶ 7–8; 442 at 4–5). Orange Whip argues that the training videos fall outside the Permanent Injunction because they were available only to paying subscribers and served an instructional purpose rather than a marketing or advertising purpose (ECF 442 at 4; 493-2 ¶ 12). This argument, however, does not consider the Permanent Injunction's separate prohibitions against creating a likelihood of confusion (ECF 409 ¶ 1.b.) or using or distributing any product that includes or bears Plaintiff's Orange Trade Dress (*id*. at ¶ 1.a.).

At the hearing, Orange Whip conceded that the training videos include Orange Whip's products and the Orange Trade Dress. While the videos may focus on demonstrating how to use Orange Whip's product, they also *use* Plaintiff's Orange Trade Dress. Thus, the videos violate paragraph 1.a. (the provision regarding *use*, sale, marketing, advertising, and distribution). Even assuming the videos fall outside paragraph 1.a., paragraph 1.b. independently prohibits Orange Whip from directly or indirectly creating a situation likely to cause confusion or deception to the public about the source, sponsorship, or approval of Hark'n's Orange Trade Dress products "by any means" (ECF 409 ¶ 1.b.). That prohibition is not limited to advertising directed at prospective purchasers. Orange Whip's existing customers and subscribers remain members of the consuming public, and restricting access to paying subscribers does not exempt the videos from the injunction.

Here, the training videos depict infringing products and demonstrate their use as part of Orange Whip's own paid training program (ECF 442 at 5). In that context, the continued display of Hark'n's Orange Trade Dress is likely to cause subscribers to believe that the products depicted originate with Orange Whip or that an authorized relationship exists between Orange Whip and Hark'n. Furthermore, a customer's purchase of a non-infringing product does not eliminate the confusion created when that customer subsequently accesses training videos featuring the infringing products. Nor does the videos' instructional purpose eliminate the likelihood of confusion.

The court therefore finds that the videos' placement behind a paywall and availability only to subscribing customers provides no objectively reasonable basis for excluding this conduct from paragraph 1.b. Although civil contempt is inappropriate where there is a "fair ground of doubt" about whether an injunction prohibited the challenged conduct, *see Taggart*, 587 U.S. at 561–62, Orange Whip's interpretation does not create such doubt here. Therefore, the court finds that

Orange Whip violated paragraphs 1.a and b by continuing to make these training videos available after the thirty-day compliance deadline. *See* ECF 442-1 ¶ 13 (indicating that the training video depicting Orange Trade Dress was removed after Hark'n filed its Motion for Civil Contempt).

4. Supplementation is required to fashion the appropriate sanction.

Having determined that Orange Whip should be held in contempt for failing reasonably to comply with the Preliminary Injunction, this court must fashion an appropriate sanction. Sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes: "(1) to compel or coerce obedience to a court order ...; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]" *Bad Ass Coffee*, 95 F. Supp. 2d at 1256–57 (quoting *O'Connor v. Midwest Pipe Fabrications, Inc.,* 972 F.2d 1204, 1211 (10th Cir. 1992)).

Here, coercive sanctions do not appear necessary because Orange Whip has complied with the Preliminary Injunction as of April 2, 2026 (*see* ECF 493-2 ¶¶ 6–10). Nonetheless, equity justifies imposing a compensatory sanction.

In *Leman v. Krentler-Arnold Hinge Last Co.*, the Supreme Court held that profits derived from violating an injunction may be recovered in civil contempt "as an equitable measure of compensation," even when the plaintiff has not established actual damages. 284 U.S. 448, 456 (1932) (citing *Hamilton-Brown Shoe Company v. Wolf Brothers & Co.*, 240 U.S. 251, 259 (1916)). Although *Leman* was a patent case, courts have extended its holding in the context of trademark infringement. For example, applying *Leman* in a trademark case, the Second Circuit held that a plaintiff could recover the contemnor's net profits without proving lost sales or other pecuniary harm. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5–7 (2d Cir. 1989) (finding

that "under a theory of unjust enrichment, a contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury . . .").

Although the court finds that compensatory damages are warranted, it makes no award of sanctions at this time, as it has not received sufficient evidence to impose a compensatory sanction for Orange Whip's noncompliance. Additional information is necessary to determine the duration and extent of this violation and the appropriate relief. Accordingly, within fourteen days after entry of this order, Orange Whip must file a declaration under penalty of perjury and produce supporting records to Hark'n as detailed in the conclusion of this ruling.

The court also finds that Orange Whip shall pay Hark'n its reasonable costs and attorney fees incurred in connection with the investigation of Orange Whip's noncompliance and the prosecution of its Motion for Civil Contempt.

## III. CONCLUSION AND ORDER

For the reasons stated above, the court GRANTS IN PART Hark'n's Motion for Civil Contempt (ECF 431), with the amount of compensatory damages remaining to be determined. To adequately determine the appropriate sanction, the court ORDERS as follows:

1. Within fourteen days after entry of this order, Orange Whip must produce to Hark'n the following:

    A. A sworn affidavit or declaration under penalty of perjury addressing:

        i. The details of when the website fully removed all videos and images depicting the Orange Trade Dress.

        ii. The total number of training videos depicting products bearing Hark'n's Orange Trade Dress that were available to subscribers on or after October 27, 2025. For each video, provide its title or other identifying information,

the platforms on which it appeared, and the dates during which it remained accessible.

iii. The specific date each video was removed or modified to blur out the Orange Trade Dress.

B. A complete accounting of subscription sales and renewals from October 27, 2025 (the date of the Certificate of Compliance), through the date of this order, identifying transaction dates, amounts charged, and amounts Orange Whip received. The accounting must include the supporting business records necessary to verify those calculations.

C. Complete sales data covering October 27, 2025 through the date of this Order, for the seven original Infringing SKUs[3] and any corresponding replacement or revised SKUs.

i. The information must include supporting sales records sufficient to verify the accounting.

ii. The accounting must separately identify sales Orange Whip contends should be excluded as non-infringing and provide the records supporting each exclusion.

2. Within fourteen days after entry of this order, Hark'n must provide Orange Whip with a detailed affidavit concerning its attorney fees incurred in connection with the investigation of Orange Whip's noncompliance and the prosecution of its motion for civil contempt.

[3] This shall include all sales of the original SKUs, whether infringing or non-infringing.

3. Within fourteen days after the parties have received the above-mentioned documents, the parties must meet and confer in good faith to attempt to agree on the amount of compensatory damages and attorney fees.
4. Within ten days after the meet and confer, the parties must file a joint stipulation identifying any agreed amount and its basis. If they cannot reach an agreement, each party must file a simultaneous memorandum within that same ten-day period, not exceeding five pages, excluding supporting exhibits. Each memorandum must identify the proposed amount of compensatory damages and attorney fees and explain its calculation with reference to the accounting records and address any remaining disputes.

IT IS SO ORDERED.

DATED this 28 September 2026.

Cecilia M. Romero

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah