**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| HARK'N TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ORANGE WHIP FITNESS X, LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO AUGMENT THE COURT'S JUDGMENT (ECF 420); AND GRANTING IN PART DEFENDANT'S MOTION TO SUPPLEMENT (ECF 493).**<br><br>Case No. 1:21-cv-00054-CMR<br><br>Chief Magistrate Judge Cecilia M. Romero |

Before the court is Plaintiff Hark'n Technologies, Inc.'s (Hark'n) Motion to Augment the Court's Judgment (Motion to Augment) (ECF 420). The court also considered Defendant Orange Whip Fitness X, LLC's (Orange Whip) Opposition (ECF 429) and Hark'n's Reply (ECF 441). Also before the court is Orange Whip's Motion for Leave to File Supplemental Declaration Regarding Motion to Augment Judgment and Motion for Civil Contempt (Motion to Supplement) (ECF 493), Hark'n's Opposition to the Motion to Supplement (ECF 494), Orange Whip's Reply (ECF 495), Hark'n's Objection to Ex. 1 of Orange Whip's Reply (ECF 496), and Orange Whip's Errata to its Reply (ECF 497). On September 15, 2026, the court heard oral argument on the above-mentioned motions and took them under advisement (ECF 500).

Having carefully considered the relevant filings and the arguments raised during the hearing, for the reasons discussed below, the court GRANTS IN PART Hark'n's Motion to Augment (ECF 420), and GRANTS IN PART Orange Whip's Motion to Supplement (ECF 493).

## I. BACKGROUND

Following a weeklong trial, on April 28, 2025, a jury entered a verdict in favor of Hark'n (ECF 300).[1] The jury found Orange Whip willfully infringed Hark'n's trade dress and engaged in unfair competition (*id.*). It also determined that Orange Whip's profits from infringement and unfair competition totaled $978,024.00 (*id.*). The jury relied on sales data for seven stock keeping units (SKUs) (collectively, the Infringing SKUs) (*see* ECF 407 at 4–5 (citing Pl. Trial Exs. 13, 14, 14.1, 27, 45)). The sales data for the Infringing SKUs included data through March 2025 (Pl. Trial Ex. 27).

Finding that disgorgement of profits was an equitable remedy to be determined by the court, the court considered the parties' post-trial briefing regarding disgorgement of profits (*see* ECF 407 or Disgorgement Order). The court agreed with the jury, and specifically found as follows:

> In considering the evidence presented at trial (*see e.g.*, Pl. Exs. 13, 14, 14.1, & 27), the court agrees with the jury that Hark'n established, with reasonable certainty, the total sales that resulted from Orange Whip's infringing activity. The court also agrees with the jury's apparent assessment of the expenses that are related to the sales of the products at issue. Specifically, the court finds it appropriate to apply the calculations found in Plaintiff's Exhibit 45, which indicates that the total sales from the infringing product amount to $995,662.00 and the cost of the initial kits amount to $17,638.00 (Pl. Ex. 45). Consequently, the court finds that the amount that should be disgorged for Orange Whip's willful infringement is $978,024.00.

(ECF 407 at 11). Using the same sales data for the Infringing SKUs the jury relied upon, the court entered judgment on September 26, 2025, awarding Hark'n $978,024.00 in disgorged profits (Judgment) (ECF 410).

[1] Given the parties' familiarity with the facts and procedural history of this dispute, the court will reiterate only the facts and procedural history relevant to the instant motion. A more fulsome description is included in previous court orders (*see, e.g.*, ECF 160 & ECF 251 (memorandum decisions ruling on the motions for summary judgment)).

The same day, the court also entered a Permanent Injunction (the Permanent Injunction) (ECF 409), which ordered, among other things, that Orange Whip is permanently and forever enjoined from:

> Directly or indirectly using, infringing, contributing to the infringement, or inducing the infringement in connection with the sale, offering for sale, marketing, advertising, or distribution of any product that includes or bears Plaintiff's Orange Trade Dress, or any reproduction, counterfeit, copy or colorable imitation thereof, on or in combination or connection with any products or services, or in any manner enabling or aiding others to do the same; [and]
> Directly or indirectly causing or creating a situation likely to cause confusion or deception to the public about the source, sponsorship, or approval of Plaintiff's Orange Trade Dress products by any means.

(*id*. at 3).

Hark'n asserts that Orange Whip continues to market and sell the infringing product despite the jury's verdict and the Permanent Injunction (ECF 420 at 3). Hark'n has filed the present Motion to Augment on October 17, 2025, pursuant to Rule 59(e), seeking to augment the Judgment to include "additional disgorgement of profits received as a result of Orange Whip's continued willful trade dress infringement from April 1, 2025—the last date of sales information introduced at trial—through October 31, 2025" (*id*. at 6–7). Hark'n specifically requests that the court order Orange Whip to supplement sales data regarding the Infringing SKUs or award an additional $108,669.33, whichever is greater (*id*. at 7, *accord* ECF 441 at 15).[2]

On June 5, 2026, Orange Whip filed its Motion to Supplement (ECF 493) seeking leave to file supplemental facts relevant to Hark'n's Motion to Augment, including leave to supplement the record with the Declaration by Douglas Wald (Mr. Wald) regarding sales data and injunction compliance (Wald Declaration) (ECF 493-2). In its Reply to the Motion to Supplement, Orange

[2] On November 6, 2025, Hark'n also filed a Motion to Hold Defendant in Civil Contempt (ECF 431), which the court will address in a separate order.

Whip attached another declaration, referred to as the Foundation Declaration by Douglas Wald (Foundation Declaration) (ECF 495-1), in which Mr. Wald explained the foundation for his earlier Wald Declaration (*see id.*). On July 10, 2026, Orange Whip filed a third declaration of Wald as an "Errata" to the Foundation Declaration (Errata Declaration) (ECF 497-1), acknowledging that, due to a clerical error, it failed to attach the documentation Mr. Wald referenced in the Foundation Declaration (ECF 497).

## II. DISCUSSION

### A. Orange Whip's Motion to Supplement (ECF 493)

Orange Whip seeks leave to supplement the record with the Wald Declaration (ECF 493-2), the Foundation Declaration (ECF 495-1), and the Errata Declaration (ECF 497-1) (collectively, the Wald Declarations). The Wald Declarations address continued sales and Orange Whip's compliance with the Permanent Injunction. Of particular relevance is Mr. Wald's admission that he identified 126 sales of products containing orange-sleeved bands since April 1, 2025, generating a total revenue of $15,412.42, and that all such sales ceased within thirty days of the Permanent Injunction (ECF 493-2 ¶¶ 3–5).

Hark'n does not oppose consideration of admissions in the Wald Declarations to the extent they support its requests for at least $108,669.33 in additional disgorgement and a finding of civil contempt (ECF 494 at 1). Hark'n nevertheless argues that the Wald Declarations are untimely and too conclusory to establish the amount of additional profits (*see id.* at 1–5). Hark'n emphasizes that, on September 4, 2025, Orange Whip agreed to provide updated sales information after the court determined which products would be included in the disgorgement award (*id.* at 2; ECF 420-2 at 2). Hark'n contends that Mr. Wald's admission regarding the sales and revenue figures does not satisfy that commitment because it lacks a supporting accounting comparable to Trial Exhibit

27, which identifies the products sold, the dates of sale, and the amount received from each sale (ECF 494 at 5).

Having considered the parties' submissions and arguments at the hearing, the court finds supplementation appropriate and will consider the Wald Declarations. As explained in the court's ruling on the Motion to Augment, however, the Wald Declarations do not provide sufficient accounting to determine the amount of additional disgorgement. The court therefore GRANTS IN PART Orange Whip's Motion to Supplement (ECF 493), but Orange Whip must also produce the supplemental accounting and supporting records as required below.

**B. Hark'n's Motion to Augment (ECF 420)**

Rule 59(e) allows a litigant to move to alter or amend a judgment, and the time to do so is 28 days from entry of the judgment. *See* Fed. R. Civ. P. 6(b)(2).[3] "Relief under Rule 59(e) is allowed in three situations: when the moving party shows "'(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice.'" *Sweet v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 831 Fed App'x 874, 880 (10th Cir. 2020) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). "Where a party seeks Rule 59(e) relief to submit additional evidence, the movant must show either that the evidence is newly discovered [or,] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence." *Id.* (quoting *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1213 (10th Cir. 2012)).

In keeping with that corrective function, "federal courts generally have [used] Rule 59(e) only" to "reconsider[ ] matters properly encompassed in a decision on the merits." *Banister v.*

[3] The timeliness of the Motion to Augment is not disputed.

*Davis*, 590 U.S. 504, 507–08 (2020) (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982)). "In particular, courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Id*. (citing 11 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2810.1, pp. 163–164 (3d ed. 2012)). "The motion is therefore tightly tied to the underlying judgment." *Id*.; *accord Ball v. People of State of Colo.*, 945 F.2d 411 (table), 1991 WL 196999, at *1 (10th Cir. Oct. 3, 1991) ("Only issues wholly collateral to the judgment in the main cause of action fall outside the requirements of Rule 59(e).").

Moving under Rule 59(e) of the Federal Rules of Civil Procedure, Hark'n requests that the court alter or amend the Judgment to include post-verdict damages (ECF 420). Orange Whip offers the following three arguments in opposition to the Motion to Augment: (1) the court has already declined to award post-verdict damages; (2) Orange Whip's pending appeal and stay weigh against reopening the judgment; and (3) Rule 59(e) does not allow for Hark'n's requested relief (*see* ECF 429, 1–6; 9–10).

1. The court declines to defer consideration of post-verdict damages pending appeal.

Orange Whip asks the court to deny Hark'n's Motion to Augment or, at a minimum, defer consideration of post-verdict sales until the appellate proceedings conclude (ECF 429 at 6). The Tenth Circuit, however, has abated the appeal "pending the district court's disposition of DC Dkt. No. 420" (ECF 498). Because the appellate proceedings await resolution of this Motion to Augment, the pending appeal provides no basis to deny the Motion or defer its consideration.

2. The court has not previously declined post-verdict damages.

Next, Orange Whip argues that the court already considered post-verdict sales because Hark'n requested relief concerning those sales in its Reply in Support of Disgorgement and

Enhancement of Damages and its Proposed Permanent Injunction (ECF 429 at 3–4). This argument is unavailing.

Hark'n's earlier enhancement request rested on the equitable and statutory factors addressed in the court's Disgorgement Order, rather than a request to calculate profits from post-verdict sales (ECF 407 at 11–12). The court's disgorgement award addressed the sales evidence presented at trial. Second, although Hark'n's Proposed Permanent Injunction requested sales data after April 1, 2025, the court's omission of that language did not resolve Hark'n's entitlement to profits from those sales (*compare* ECF 396 *with* ECF 409).

As Hark'n explained at the hearing, it had repeatedly communicated with Orange Whip about obtaining an updated accounting, and Orange Whip had agreed to provide updated sales information for products included in any disgorgement award (ECF 420, Ex. B). Hark'n further articulated that it anticipated filing a motion for supplemental relief after the court's disgorgement ruling, but it did not anticipate that the court would enter that ruling, final judgment, and permanent injunction on the same day. After entry of judgment on September 26, 2025 (ECF 410), Hark'n filed its Motion to Augment on October 17, 2025, within Rule 59(e)'s twenty-eight-day deadline (ECF 420). *See* Fed. R. Civ. P. 59(e).

Hark'n's efforts to obtain an accounting and Orange Whip's agreement to provide one demonstrate that the parties contemplated an updated accounting following the court's disgorgement ruling. Those circumstances do not establish that the court previously adjudicated recovery for the additional sales. The court therefore rejects Orange Whip's argument that the Motion to Augment seeks relief already considered and denied.

3. The Motion to Augment is Properly Brought Pursuant to Rule 59(e), but Only in Part.

Orange Whip argues that the Motion lies outside Rule 59(e)'s reach and thus should be denied (ECF 429 at 9–10). Orange Whip specifically argues that the Motion to Augment does not seek "to correct any error in the judgment or to reconsider an issue already adjudicated. Instead, it seeks a new, substantive money damages award and seeks to expand the judgment to cover a new period of alleged infringement occurring after the record closed" (*id*. at 10). As such, Orange Whip asserts that Hark'n's request falls outside Rule 59(e)'s corrective scope (*id*.).

Neither Hark'n, Orange Whip, nor the court has identified a decision expressly analyzing whether Rule 59(e) permits an additional award of post-verdict profits in these circumstances. In light of the lack of precedent, the court has carefully considered whether the requested relief is "tightly tied to the underlying judgment." *Banister*, 590 U.S. at 508. To make this determination, the court has looked to other cases to determine when courts have considered post-trial/post-verdict profits. Although the cases discussed below do not resolve the precise question before the court, they demonstrate that post-trial damages are tightly intertwined with a court's post-trial determination of the appropriate relief based on the infringement adjudicated at trial.

For example, in *K-TEC v. Vita-Mix*, following a jury verdict finding patent infringement, the plaintiff moved to amend the judgment to include damages for infringement occurring after the verdict. 765 F. Supp. 2d 1304, 1317 (D. Utah 2011). The defendant opposed the request, arguing that the plaintiff had waived post-verdict damages by omitting them from the pretrial order and that calculating those damages would improperly displace the jury. *Id*. The court nevertheless granted the motion, resolved the parties' other post-trial motions, and entered a permanent injunction. *Id*. at 1320. The court directed the defendant to account for infringing sales from the

verdict through the date of the injunction and ordered additional briefing to determine the appropriate award. *Id*.

Similarly, in *Hermès International v. Rothschild*, the jury awarded profits covering trademark infringement through the day before trial. *See* 678 F. Supp. 3d 475, 495 (S.D.N.Y. 2023). When the court later considered the plaintiff's request for a permanent injunction, it separately considered profits earned since trial began. *Id*. ("the only issue left to resolve is whether Hermès is also entitled to net profits from the first day of trial -- January 31, 2023 -- to the present for Rothschild's continued violations of its trademarks."). Applying the Lanham Act's equitable principles, the court ordered disgorgement of those additional profits and required the defendant to report and transfer the relevant earnings to the end of the month for the date of the permanent injunction. *Id*. at 496.

Likewise, in *Clearline Technologies Ltd. v. Cooper B-Line, Inc.*, relying on patent case law regarding supplemental damages, the court concluded that continued sales of infringing products after the verdict warranted supplemental damages under the Lanham Act. 948 F. Supp. 2d 691, 710–11 (S.D. Tex. 2013) ("[T]he Court agrees with Clearline that patent law provides useful guidance on the question of whether to award supplemental damages for post-verdict infringement. This is because patent case law makes clear that supplemental damages for post-verdict infringement are required *as compensation.*" (citing *Finjan, Inc. v. Secure Computing Corp.,* 626 F.3d 1197, 1212–13 (Fed. Cir. 2010))). The court then ordered disclosure of post-verdict sales figures and directed the parties to attempt to agree on an award or submit a renewed motion for supplemental damages. *Id*. at 711.

Taken together, these cases demonstrate that supplemental recovery for continuing infringement is appropriately addressed when the court enters or amends its judgment or resolves

a request for a permanent injunction. Hark'n's Motion to Augment therefore concerns relief that could appropriately have been addressed as part of that judgment. In this respect, the request concerns a matter properly encompassed in a decision on the merits and is "tightly tied to the underlying judgment." *Banister*, 590 U.S. at 508.

Here, the court entered Judgment and the Permanent Injunction on September 26, 2025 (ECF 407 and 409). The court's Judgment would have been an appropriate stage to address profits earned from continued infringement after the jury verdict; however, the court did not address these additional damages because the issue was not raised at that time. Nevertheless, the court finds it appropriate to consider amending its previous judgment pursuant to Rule 59(e), so that the judgment includes post-jury infringement to the date of the Judgment and Permanent Injunction (April 1 through September 26, 2025). The court finds no authority to go beyond this time, as Hark'n argues, and declines to modify the judgment beyond September 26, 2025.

4. <u>Amendment under Rule 59(e) is appropriate.</u>

Having concluded that the Motion to Augment falls within Rule 59(e)'s scope, the court must determine whether Hark'n has established grounds for relief. Rule 59(e) permits relief based on an intervening change in controlling law, previously unavailable evidence, or the need to correct clear error or prevent manifest injustice. *Sweet*, 831 F. App'x at 880. When a party seeks to introduce additional evidence, it must show that the evidence is newly discovered or that counsel made a diligent but unsuccessful effort to discover it before the challenged decision. *Id.*

Orange Whip's opposition primarily challenges whether the requested relief falls within Rule 59(e), without separately addressing these grounds (*see* ECF 429). The court nevertheless independently finds that Hark'n has satisfied the standard. As discussed above, Hark'n repeatedly sought an updated accounting, and Orange Whip agreed to provide additional sales information

following the court's disgorgement ruling (ECF 420, Ex. B; ECF 345-1, at 3). Despite those efforts, Hark'n did not obtain that information. Orange Whip has since submitted the Wald Declarations containing additional evidence confirming continued sales beyond the period covered by the trial evidence and accounting information concerning those sales (*see* ECF 497-1 at 7–8). This evidence was not before the court when it entered Judgment and bears directly on the amount of additional profits subject to disgorgement. Hark'n's efforts to obtain it, together with Orange Whip's agreement to supplement the accounting, establish the diligence required to consider previously unavailable evidence under Rule 59(e).

The court also finds that relief is warranted to prevent manifest injustice. The Judgment did not account for continued infringing sales during April 1 through September 26, 2025. When the accounting had not been provided, Hark'n timely moved to amend the Judgment. Under these circumstances, denying the consideration of otherwise recoverable profits would be manifestly unjust. The court therefore finds grounds to amend the Judgment to account for profits attributable to infringement during April 1 through September 26, 2025.

5. <u>Supplementation of sales for the Infringing SKUs is needed.</u>

As a preliminary matter, at this time, the court declines to consider Hark'n's proposed method of estimating additional profits (*see* ECF 420 at 2, 7). Hark'n calculates an average monthly profit of approximately $15,524.19 by dividing the original $978,024.00 judgment by the sixty-three months of profits it represents; Hark'n then applies that average to seven additional months, requesting an additional $108,669.33 9 (*see* ECF 420 at 7). An updated accounting will permit the court to determine additional disgorgement using actual sales data rather than Hark'n's estimation.

The procedure adopted in *K-TEC* is instructive. In that patent infringement case, the court rejected extrapolating average daily damages from the jury's award because evidence indicated that sales had declined over time. *K-TEC, Inc.*, 765 F. Supp. 2 at 1317. The court instead required the defendant to provide an accounting of its actual infringing sales within three weeks, followed by simultaneous memoranda, limited to five pages, addressing the appropriate supplemental award. *Id*.

At the hearing, however, Orange Whip identified two changes that complicate the accounting. First, it represented that the identifiers associated with the seven Infringing SKUs had changed in its internal tracking systems. Second, it asserted that it removed infringing products from certain products/packages but continued selling the modified products under their original SKU numbers. According to Orange Whip, sales recorded under those SKUs may include both infringing and non-infringing products. In light of these new representations, the court requires, in addition to sales data for the original SKUs, a detailed explanation of these changes supported by business records.

Therefore, within fourteen days after entry of this order, Orange Whip must produce to Hark'n complete supplemental sales data covering April 1 through September 26, 2025, for the seven original Infringing SKUs[4] and any corresponding replacement or revised SKUs. The production must include supporting records and a sworn affidavit or declaration under penalty of perjury addressing the changes to the seven original SKUs and the modifications made to eliminate infringement.

Lastly, generalized assertions do not substitute for the required accounting and supporting records. Orange Whip is cautioned that inadequate accounting may require the court to determine

[4] This shall include all sales of the original SKUs, whether infringing or non-infringing.

additional disgorgement using reasonable estimates supported by the available record. This may include consideration of Hark'n's proposed estimation method. *See Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013) ("Although plaintiffs must generally establish damages with 'specificity,' some estimation is acceptable if necessitated 'in part [by] the Defendants' poor record keeping.'" (quoting *Australian Gold, Inc. v. Hatfield,* 436 F.3d 1228, 1242 (10th Cir. 2006))).

## III. CONCLUSION AND ORDER

For the reasons stated above, the court GRANTS IN PART Orange Whip's Motion to Supplement (ECF 493). The court also GRANTS IN PART Plaintiff's Motion to Augment the Judgment (ECF 420) as to additional damages for April 1 through September 26, 2025. The amount of the additional award remains to be determined. The court further ORDERS as follows:

1. Within fourteen days after entry of this order, Orange Whip must produce to Hark'n the following:
   - A. Complete sales data covering April 1 through September 26, 2025, for the seven original Infringing SKUs[5] and any corresponding replacement or revised SKUs.
     - i. The information must include supporting sales records sufficient to verify the accounting.
     - ii. The accounting must separately identify sales Orange Whip contends should be excluded as non-infringing and provide the records supporting each exclusion.
   - B. A sworn affidavit or declaration under penalty of perjury addressing the following:

[5] This shall include all sales of the original SKUs, whether infringing or non-infringing.

i. changes to Orange Whip's internal tracking of the seven original SKUs and the date each change took effect.

ii. For each SKU under which Orange Whip claims it continued selling products that had been modified to eliminate infringement, Orange Whip must describe precisely what was removed or changed and when those changes were made. These assertions must be supported by relevant business records and must also explain whether original and modified versions were sold during any overlapping period and how Orange Whip distinguishes those sales in its records.

2. Within fourteen days after Hark'n receives the supplemental accounting, the parties must meet and confer in good faith to attempt to agree on the amount of additional disgorgement.

3. Within ten days after the meet-and-confer, the parties must file a joint stipulation identifying any agreed amount and its basis. If they cannot reach an agreement, each party must file a simultaneous memorandum within that same ten-day period, not exceeding five pages, excluding supporting exhibits. Each memorandum must identify the proposed amount of additional disgorgement, explain its calculation with reference to the accounting records, and address any remaining disputes.

IT IS SO ORDERED.

DATED this 28 September 2026.

Cecilia M. Romero

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah